D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CATALINO MENDEZ et al., individually and on behalf of
all others similarly situated,

                              Plaintiffs,

           -against-

MCSS REST. CORP. et al.,

                              Defendants.
------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-2746 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiffs, a group of 18 restaurant workers, move for Rule 23 class certification in this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action against Defendants, the owners and operators of Cross Bay Diner in Howard Beach, Queens, and Parkview Diner in Brooklyn.[1] (Compl. (Dkt. 1); see Pls. Appl. for Pre-Mot. Conference (Dkt. 47) (noting that there are three named plaintiffs and 15 opt-in plaintiffs, for a total of 18 Plaintiffs.) Plaintiffs, who worked in a wide variety of tipped and non-tipped positions, allege that Defendants failed to pay them the minimum wage or overtime pay for certain time periods between May 31, 2010 and the present, in violation of FLSA and the NYLL. (Compl. ¶¶ 30, 37; Pl. Mot. for Class Certification ("Mot.") (Dkt. 53) at 1-2.) Plaintiffs also allege that Defendants failed to pay them "spread-of-hours premiums when working a shift and/or split shift of [10] . . . or more hours" and that they "did not receive uniform maintenance pay, [or] . . . proper wage statements and wage notices," in violation of the NYLL. (Id. ¶¶ 37, 75-78.)

---

[1] Plaintiffs assert claims against MCSS Restaurant Corp. ("MCSS") and Al-Ken Corp. ("Al-Ken"), which do business as Cross Bay Diner; Miko Enterprises, LLC ("Miko"), which does business as Parkview Diner; and Michael Siderakis, Christos Siderakis, and Konstantino Siklas, all of whom are allegedly at least part owners and operators of MCSS, Al-Ken, and Miko. (Compl. ¶¶ 12-21, 47.) Miko and Christos Siderakis (the "Parkview Defendants") have defaulted. (Cert. of Default (Dkt. 17).)

1

Having previously obtained (with the consent of the Defendants who have not defaulted) certification as a FLSA collective action (Dec. 2, 2016 Order (Dkt. 23), Plaintiffs now ask the court to exercise supplemental jurisdiction over, and certify four classes with respect to, their NYLL claims. (Mot. at 1-2.) Collectively, these four classes consist of non-management employees who worked in the Cross Bay Diner or the Parkview Diner during the relevant time period. (Id. at 1-2.) Defendants MCSS, Al-Ken, Michael Siderakis, and Konstantino Siklas (the "Cross Bay Defendants") oppose class certification. (Cross Bay Defs. Mem. in Opp'n to Mot. for Class Cert. ("Opp'n") (Dkt. 56).) Plaintiffs' motion is GRANTED for the following reasons.

## I.  BACKGROUND

### A.  Relevant Facts

#### 1.  Defendants' Diners, Management, and Employees

Plaintiffs have adduced evidence that Cross Bay Diner and Parkview Diner operate as a single enterprise under common ownership and management. Specifically, Defendant Michael Siderakis co-owned both and was heavily involved in hiring, supervising, and paying employees for both. (See Tr. of Dep. of Pl. Denis Rosales ("Rosales Dep.") (Dkt. 55-1) at 9:15-10:23, 25:6-16, 40:3-7; Tr. of Dep. of Pl. Marco Bonola Lucero ("Lucero Dep.") (Dkt. 55-2) at 12:12-14:4; Tr. of Dep. of Pl. Nicoles Jimenez ("Jimenez Dep.") (Dkt. 55-3) at 7:20-9:5, 31:12-15; Tr. of Dep. of Pl. Reyes Flores ("Flores Dep.") (Dkt. 55-4) at 8:16-9:13, 11:2-24, 14:14-15:9; Decl. of Pl. Catalino Mendez ("Mendez Decl.") (Dkt. 55-5) ¶¶ 2, 3; Decl. of Pl. Israel Rodriguez ("Rodriguez Decl.") (Dkt. 55-6) ¶ 2; Decl. of Pl. Eduardo Chocoj ("Chocoj Decl.") (Dkt. 55-7) ¶¶ 2, 14; Decl. of Pl. Luis Cardona ("L. Cardona Decl.") (Dkt. 55-8) ¶¶ 2, 7; Decl. of Pl. Jose Cardona ("J. Cardona Decl.") (Dkt. 55-9) ¶ 2; Decl. of Pl. Rigoberto Alvarez ("Alvarez Decl.") (Dkt. 55-10) ¶ 2.) Defendant Siklas helped manage Parkview (Jimenez Dep. at 9:11-23, 12:6-

13), and Defendant Christos Siderakis helped manage Cross Bay Diner (Flores Dep. at 22:17-22; Chocoj Decl. ¶ 2). Managers named Eddie, Eric, and Pablo appear to have worked at both diners. (Rosales Decl. at 14:5-21, 21:12-22:16, 25:5-13, 28:2-22 (indicating that Pablo worked at Cross Bay); Jimenez Dep. at 29:13-23 (indicating that Eric worked at Parkview and Cross Bay); Flores Dep. at 22:17-23:10 (indicating that Pablo worked at Cross Bay), 27:8-27:12 (indicating that Eddie and Pablo worked at Parkview); Mendez Decl. ¶¶ 2, 15 (Eddie and Eric[2] worked at Cross Bay).

Because of damage from Hurricane Sandy, Cross Bay Diner closed for renovations on or about October 29, 2012 and did not reopen until late May or early June 2013. (Compl. ¶ 70; Mem. at 5; see Mendez Decl. ¶ 1; Rodriguez Decl. ¶ 1; Chocoj Decl. ¶ 1.) During the renovations, many Cross Bay employees were allegedly transferred to work at Parkview. (Compl. ¶ 70; Mem. at 5; see Rodriguez Decl. ¶ 1.) Also during this period, the New York State Department of Labor ("DOL") filed a complaint in this district against Defendants MCSS, Michael Siderakis, and Chris Siderakis, and then filed a settlement agreement and consent judgment (the "Consent Judgment") requiring the defendants to make payments totaling $275,000 for minimum wage and overtime compensation due to certain Cross Bay employees. (Mar. 27, 2013 Consent J. (Dkt. 55-12).)

2.    Plaintiffs' Work at the Diners

Plaintiffs and the putative class members (the "Class Members") worked in various positions at the two diners. As for the three named Plaintiffs, Plaintiff Mendez was a dishwasher, busser, and server at Cross Bay from about January 2010 through November 2015,

---

[2] In his declaration, Mendez spells this name as "Erik," not "Eric." (Mendez Decl. ¶ 15.) According to Plaintiffs, this "Erik" is the same person as the "Eric" that other Plaintiffs referenced. (See Mem. in Supp. of Mot. ("Mem.") (Dkt. 54) at 5.)

3

except for a seven-month period after Hurricane Sandy, spanning late 2012 and early 2013, when Cross Bay was closed. (Mendez Decl. ¶ 1.) Plaintiff Rodriguez was a cook at Cross Bay from about 2006 to about January 2015, except for during Cross Bay's post-Sandy closure, when he was a cook at Parkview. (Rodriguez Decl. ¶ 1.) Plaintiff Chocoj was a dishwasher, busser, and cook at Cross Bay from 2011 through March 2016, except for during the post-Sandy closure. (Chocoj Decl. ¶ 1.) The fifteen Plaintiffs that have opted into this case also had tipped and non-tipped positions at Cross Bay and Parkview; several worked at both diners. (See Mem. at 6-7 (stating that the fifteen opt-in Plaintiffs worked at Cross Bay and Parkview and listing the employment histories of seven of them).)

### 3.   Defendants' Pay Policies for Non-Management Employees

Plaintiffs have adduced evidence that Defendants' corporate payroll policies violated the Class Members' FLSA and NYLL rights in four ways: failure to pay minimum wage and overtime; failure to pay "spread-of-hours" premiums; failure to provide wage statements and wage notices; and unlawful deductions from Plaintiffs' wages and failure to reimburse for uniform expenses. (See Mem. at 7-10.)

#### a.   *Failure to Pay Minimum Wage and Overtime*

According to Plaintiffs, Defendants failed to pay the statutory minimum wage to most or all of the Class Members—including both tipped and non-tipped employees—and failed to pay requisite overtime premiums for hours worked in excess of forty per week. (Mem. at 7.) Defendants paid tipped employees an hourly rate below the statutory minimum wage (see Mendez Decl. ¶¶ 8, 11; Chocoj Decl. ¶¶ 7, 17; L. Cardona Decl. ¶¶ 4, 6, 14; Alvarez Decl. ¶¶ 4, 8) and often (1) made tipped employees work beyond their scheduled shifts without compensation and (2) paid them at or below their standard-time rates for scheduled overtime

hours (Mendez Decl. ¶¶ 8-11, 14-15, 17-19, 23; Chocoj Decl. ¶¶ 7, 19-20; L. Cardona Decl.

¶¶ 4-6, 8-11; Alvarez Decl. ¶¶ 4-5, 9). This continued even after the DOL investigation. (Mem.

at 8.) Further, Plaintiffs allege, any overtime premiums that Defendants may have paid tipped

employees pursuant to the Consent Judgment were improperly calculated on the basis of the

employees' tipped minimum wage. (Id.)

Allegedly, non-tipped employees were paid a flat weekly rate that often fell below the

statutory minimum wage. (Mem. at 8; see Rosales Dep. at 9:15-25, 23:11-24:6, 48:14-16;

Lucero Dep. at 11:22-24, 27:2-6; Jimenez Dep. at 11:24-25, 13:5-11, 26:13-28:12; Flores Dep. at

10:8-25, 17:25-18:4; Mendez Decl. ¶¶ 7, 24; Rodriguez Decl. ¶ 6; Chocoj Decl. ¶¶ 4, 21; J.

Cardona Decl. ¶ 3.) This flat rate was never increased when employees worked past their

scheduled hours. (Jimenez Dep. at 18:2-19:19; Flores Dep. at 12:4-19; Mendez Decl. ¶¶ 6, 7;

Rodriguez Decl. ¶¶ 10, 12, 14.) This did not change after the DOL investigation. (Mem. at 8;

see Rosales Dep. at 9:22-25; Lucero Dep. at 10:12-16, Flores Dep. at 37:17-39:11; Rodriguez

Decl. ¶¶ 6, 10; Chocoj Decl. ¶ 12; J. Cardona Decl. ¶ 8.)

### b. Failure to Pay "Spread-of-Hours" Premiums

There is evidence that Defendants did not try to pay "spread-of-hours" premiums[3] to

Cross Bay employees between May 31, 2010 and October 29, 2012, or Parkview employees

between May 2010 and July 2014. (Mem. at 9; see Rosales Dep. at 48:14-19; Lucero Dep. at

27:16-24; Jimenez Dep. at 18:2-19:19, 49:3-6; Mendez Decl. ¶ 6, 8, 16; Rodriguez Decl. ¶¶ 4, 7;

Chocoj Decl. ¶¶ 11, 19.) After the 2013 DOL investigation, Defendants purported to pay spread-

---

[3] Spread-of-hours premiums are payments of an extra hour's worth of wages for employees who work more than ten hours in a day. (Mem. at 9.)

of-hours premiums. (Mem. at 9.) However, Plaintiffs allege that they never received these payments. (Id.)

### c. Failure to Provide Wage Statements and Wage Notices

Allegedly, Defendants also failed to provide all Class Members with accurate wage statements. (Mem. at 9.) Employees who were paid in cash—i.e., all Cross Bay employees between May 31, 2010 and October 29, 2012; all Parkview employees between May 2010 and July 2014; many Cross Bay employees after the diner reopened post-Sandy; and many Parkview employees after July 2014—received the cash in an envelope without paystubs. (Id.; see Rosales Dep. at 22:25-23:10; Lucero Dep. at 11:16-12:5, 27:25-28:4; Jimenez Dep. at 11:14-12:11, 30:7-31:11, 40:16-41:2, 48:18-22; Mendez Decl. ¶¶ 12, 20; Rodriguez Decl. ¶¶ 8, 11; Chocoj Decl. ¶¶ 14, 18; L. Cardona Decl. ¶¶ 7, 13; J. Cardona Decl. ¶¶ 5, 9; Alvarez Decl. ¶¶ 4, 7.) Employees who were supposed to be paid with checks—i.e., some Cross Bay employees after May 2013 and some Parkview employees after July 2014—received only a portion of their wages by check and the other potions by cash, and were only given paystubs for the check portions. (Mem. at 9-10; Flores Dep. at 24:14-26:16, 30:10-13, 35:19-37:22.) Thus, Class Members' wage statements were inaccurate. (Mem. at 10.)

Plaintiffs also assert that, before about 2014, Defendants did not provide "wage notices" to Class Members indicating their regular rate of pay, deductions, and payday. (Id.; see Flores Dep. at 28:23-32:10; Mendez Decl. ¶ 22; Rodriguez Decl. ¶ 10; Chocoj Decl. ¶ 17; J. Cardona Decl. ¶ 8; Alvarez Decl. ¶ 8.) Starting in about 2014, Defendants began providing wage notices but did not include employees' tip credits. (Mem. at 10; see Reyes Flores Wage Notice (Dkt. 55-13); Luis Cardona Wage Notice (Dkt. 55-15).)

### d. Unlawful Deductions from Plaintiffs' Wages and Failure to Reimburse for Uniform Expenses

Defendants allegedly deducted from employees' wages for meals, even when Plaintiffs did not eat at the restaurant. (Mem. at 10; see Rosales Dep. at 23:11-21, 32:13-19; Jimenez Dep. at 41:7-13; Flores Dep. at 43:6-44:6; Mendez Decl. ¶ 21; Rodriguez Decl. ¶ 9; Chocoj Decl. ¶ 17; L. Cardona Decl. ¶ 12; J. Cardona Decl. ¶ 7; Alvarez Decl. ¶ 6; see also Reyes Flores Wage Notice; Luis Cardona Wage Notice.) Evidence also suggests that Defendants charged tipped employees for the costs of required uniforms and did not provide tipped or non-tipped employees with uniform maintenance expenses. (Mem. at 10; see Rosales Dep. at 37:20-23, 49:10; Lucero Dep. at 19:14-20:10; Jimenez Dep. at 13:14-20, 15:2-7; Mendez Decl. ¶ 21; Rodriguez Decl. ¶ 13; Chocoj Decl. ¶¶ 9, 15; L. Cardona Decl. ¶ 12; J. Cardona Decl. ¶ 7; Alvarez Decl. ¶ 6.) Per Plaintiffs, all Class Members are thus entitled to recover uniform expenses. (Mem. at 10.)

### 4. Poor Timekeeping Practices

Plaintiffs allege that Defendants did not keep accurate records of employees' hours and thus did not pay them correctly. (Mem. at 11.) Allegedly, Defendants' time cards show discrepancies between, on the one hand, the numbers of hours for which employees were paid (which are handwritten on the time cards), and on the other hand, the numbers of hours that employees recorded themselves as having worked. (Id. (citing First Time Cards (Dkt. 55-14); Second Time Cards (Dkt. 55-16); Third Time Cards (Dkt. 55-18)).) In depositions and declarations, Plaintiffs have described extensive errors with Defendants' timekeeping systems, timecards, and paystubs. (Id. (citing Rosales Dep. at 41:2-21, 42:14-44:8, 45:11-46:9; Lucero Dep. at 22:10-24, 25:22-27:6; Jimenez Dep. at 34:5-12, 40:5-41:19; 44:7-45:10, 47:15-48:22; Flores Dep. at 32:11-33:11, 36:9-39:11, 41:11-42:23, 44:22-45:18).)

5.    Differences Among the Plaintiffs

As the Cross Bay Defendants point out (Opp'n at 5-8), Plaintiffs did not have identical experiences.  For example, one Plaintiff (i) used a computer to clock in and out rather than time cards and (ii) has testified that he never saw other employees use time cards either.  (Additional Excerpts of Tr. of Dep. of Pl. Denis Rosales ("Rosales Dep., Additional Excerpts") (Dkt. 56-1) at 41:2-12, 42:16-43:25.)  Other Plaintiffs did use time cards to clock in and out.  (See Additional Excerpts of Tr. of Dep. of Pl. Marco Bonola Lucero ("Lucero Dep., Additional Excerpts") (Dkt. 56-3) at 25:25-26:12; Additional Excerpts of Tr. of Dep. of Pl. Reyes Flores ("Flores Dep., Additional Excerpts") (Dkt. 56-4) at 39:18-40:9.)  Another Plaintiff gave apparently contradictory testimony about whether he used or signed time cards and whether they signed wage notices.  (Compare Additional Excerpts of Tr. of Dep. of Pl. Nicoles Jimenez ("Jimenez Dep., Additional Excerpts") (Dkt. 56-2) at 42:15-20 ("Q. . . . Have you seen that time card before?  A. I never punch in with the card."), with id. at 43:7-9 ("A. I haven't signed any cards.  I do punch in with the card, but I never signed anything like that.").  One Plaintiff testified that he received wage notices (Flores Dep., Additional Excerpts at 28:23-29:18); another testified that he was never given wage notices but instead was made to sign blank pieces of paper on which Defendants later printed the wage notice (Jimenez Dep., Additional Excerpts at 47:15-48:22.)

**B.    Procedural History**

Plaintiffs filed this case on May 31, 2016.  (Compl.)  The Cross Bay Defendants answered on September 1, 2016 (Answer (Dkt. 14); the Parkview Defendants defaulted (Cert. of Default).

Plaintiffs bring eight claims.  (Compl.)  The first two are FLSA collective action claims for unpaid overtime and unpaid minimum wage on behalf of all non-management employees

who worked at Cross Bay Diner and Parkview Diner at any time since May 31, 2013. (Id. ¶¶ 90-97.) The other six are NYLL claims for: failure to pay minimum wage for all hours worked in violation of § 650 et seq. ("Count Three") (id. ¶¶ 98-100); failure to pay overtime for hours worked in excess of forty per week in violation of § 650 et seq. ("Count Four") (id. ¶¶ 101-03); failure to pay spread-of-hours premiums for days in which the employees lasted ten or more hours in violation of N.Y. Comp. Code R. & Regs. Tit. 12, § 137-1.7 (2010), 146-1.6 (2012) ("Count Five") (id. ¶¶ 104-06); failure to provide wage notices in violation of NYLL, Article 6, § 195 (id. ¶¶ 107-09) ("Count Six"); failure to provide wage statements in violation of Article 6, § 195 (id. ¶¶ 110-12) ("Count Seven"); and failure to reimburse for the purchase of required uniforms and to provide uniform maintenance pay in violation of N.Y. Comp. Code R. & Regs. Tit. 12 §§ 138-1.8 (2009), 146-1.7 & 1.8 (2011) ("Count Eight") (id. ¶¶ 113-15).

With the Cross Bay Defendants' consent, the court certified Plaintiffs' two FLSA claims as a collective action and authorized Plaintiffs to issue notice to all current and former non-management employees who worked at Cross Bay at any time between May 31, 2013 and December 6, 2016. (Dec. 6, 2016 Order.) Defendants provided a list of 46 employees who met this definition. (See Decl. of Brent Pelton ("Pelton Decl.") (Dkt. 55) ¶ 11.) 17 collective action members have opted into this case by filing consent forms. (See id. ¶ 12.) The parties have exchanged discovery, taken depositions of four opt-in Plaintiffs, and obtained declarations from six other Plaintiffs. (See id. ¶¶ 13-24.)

C.     The Instant Motion

Plaintiffs now ask the court to exercise supplemental jurisdiction (Mem. at 11-14) and certify four classes (Mot. at 1-2.; Mem. at 1-2) with respect to their NYLL claims. Specifically, they move to certify Counts Three through Eight on behalf of the following classes:

1. All persons who worked as tipped hourly food service workers ("tipped employees") at Cross Bay Diner between May 31, 2010 and its closure after Hurricane Sandy in or around October 29, 2012 and at Parkview Diner at any time between May 31, 2010 and its sale in or around July 2014 (the "Old Tipped Employees"); and

2. All persons who worked as non-tipped employees at Cross Bay Diner between May 31, 2010 and its closure after Hurricane Sandy in or around October 29, 2012 and at Parkview Diner at any time between May 31, 2010 and its sale in or around July 2014 (the "Old Non-Tipped Employees").

(Mot. at 1-2; Mem. at 1-2.) Plaintiffs further seek to certify Counts Three through Five, Seven, and Eight on behalf of the following classes:

3. All persons who worked as tipped employees at Cross Bay Diner at any time between its reopening after Hurricane Sandy on or about May 24, 2013 and the present (the "New Tipped Employees"); and

4. All persons who worked as non-tipped employees at Cross Bay Diner at any time between its re-opening after Hurricane Sandy on or about May 24, 2013 and the present (the "New Non-Tipped Employees").[4]

(Mot. at 2; Mem. at 2.) This means that there are two class periods: (1) the "Old Period," which encompasses employees that worked at either Cross Bay Diner at any time between May 31, 2010 and October 29, 2012, or Parkview Diner at any time between May 31, 2010, and July 2014; and (2) the "New Period," which encompasses Cross Bay Diner employees from May 24, 2013 to the present.

Plaintiffs also request that the three named plaintiffs be appointed class representatives; that their counsel, Pelton Graham LLC, be appointed as class counsel under Federal Rule of

---

[4] The primary difference between the tipped and non-tipped classes is that the minimum-wage claims of the tipped employees are based on Defendants' alleged payment of a low hourly rate and failure to notify of the tip credit, while the non-tipped employees' minimum-wage claims are based on Defendants' alleged payment of a low flat weekly rate. (Mem. at 2 n.2.)

Civil Procedure 23(g); and that the court authorize Plaintiffs to send notice to Class Members.[5] (Mem. at 2.)

The Cross Bay Defendants oppose the instant motion. (Opp'n.) They argue that Plaintiffs have not met their burden under Rule 23(b)(3) to show that questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for adjudicating the controversy. (Id. at 5-8.) However, Defendants do not contest the court's exercise of supplemental jurisdiction over Plaintiffs' NYLL claims.

## II. DISCUSSION

### A. Supplemental Jurisdiction

#### 1. Legal Standard

Courts determine whether to exercise supplemental jurisdiction over state-law claims using the framework established by 28 U.S.C. § 1367. To trigger supplemental jurisdiction, a claim must be "so related to claims in the action . . . that they form part of the same case or controversy." § 1367(a): see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) (holding that, for a federal court to exercise to supplemental jurisdiction, the state and federal claims must stem from "a common nucleus of operative fact").

Once a claim passes this threshold, the court must exercise supplemental jurisdiction unless the claim falls into one of four enumerated exceptions:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

---

[5] Plaintiffs propose to confer with Defendants regarding the form of class notice and the production of Class Members' contact information before submitting a proposed notice to the court. (Id. at 2 n.3.)

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c); Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998). "If one of the § 1367(c) exceptions applies, the court may decide to decline jurisdiction over the state-law claims but only after considering whether such a decision upsets the interests of 'judicial economy, convenience, fairness, and comity.'" Chen v. Oceanica Chinese Rest., Inc., 13-CV-4623 (NGG), 2018 WL 3973004, at *2 (E.D.N.Y. Aug. 20, 2018) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988)); see Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 85 (2d Cir. 2018).

"Essentially, exercising supplemental jurisdiction over a state-law claim depends on three questions." Chen, 2018 WL 3973004, at *2. "Does the claim fall into a common nucleus of operative fact with other remaining federal claims?" Id. "If so, does the claim meet one of the four exceptions under § 1367(c)?" Id. "And, if so, is it convenient and fair to the parties to exercise supplemental jurisdiction over the claim as well as efficient and respectful to state and federal interests?" Id.

2.    Application

All of Plaintiffs' NYLL claims fall into the same common nucleus of operative fact as Plaintiffs' FLSA claims. See Gibbs, 383 U.S. at 725. Counts Three and Four challenge the same practices as Plaintiffs' FLSA claims—specifically, Defendants' failure to pay the statutory minimum wage and overtime premiums for hours worked in excess of forty hours per week. (Compare Compl. ¶¶ 98-103 (describing NYLL minimum-wage and overtime claims), with id. ¶¶ 90-97 (describing FLSA minimum-wage and overtime claims).) The legal standards for analyzing these claims are identical. See N.Y. Comp. Codes R. & Regs., tit. 12, § 142-

3.2 ("[A]n employer shall pay employees [overtime wages] subject to the exemptions of Section 13 of the Fair Labor Standards Act."); see also Reiseck v. Universal Commc'ns of Miami. Inc., 591 F.3d 101, 105 (2d Cir. 2010) ("The NYLL . . . mandates overtime pay and applies the same exemptions as the FLSA."). "It is therefore no surprise that, in cases with overlapping FLSA and NYLL claims, federal courts generally exercise supplemental jurisdiction." Chen, 2018 WL 3973004, at *3 (citing Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011)).

Counts Five, Six, Seven, and Eight also involve Defendants' employee-payment practices and involve much the same evidence as the FLSA claims. (See Compl. ¶¶ 104-15; Mem. at 12.) "The contested facts in these claims [] all stem from the same time period, the same location, and the same overall circumstance." Chen, 2018 WL 3973004, at *3. Because Counts Five through Eight share "approximately the same set of events" as Plaintiffs' FLSA claims, they are part of a common nucleus of operative fact. See id. (citing Treglia v. Town of Manlius, 313 F.3d 713, 723 (2d Cir. 2002).

None of Plaintiffs' NYLL claims fall under any of the § 1367(c) exceptions. Therefore, the court must exercise supplemental jurisdiction over them. See id.

    **B.**    **Class Certification**

        1.    Legal Standard Generally

A plaintiff seeking certification of a Rule 23(b)(3) class action bears the burden of satisfying the requirements of Rule 23(a)— numerosity, commonality, typicality, and adequacy of representation—as well as Rule 23(b)(3)'s requirements: (1) that "the questions of law or fact common to class members predominate over any questions affecting only individual members" (the "predominance" requirement); and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the "superiority" requirement).

13

In re Petrobras Sec., 862 F.3d 250, 260 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23(a), (b)(3)). The Second Circuit has also "recognized an 'implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" Id. (quoting Brecher v. Republic of Arg., 806 F.3d 22, 24 (2d Cir. 2015)).

"[C]ourts in the Second Circuit routinely certify class action [s] in FLSA matters so that New York State and federal wage and hour claims are considered together." Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 163 (S.D.N.Y. 2008) (citation omitted) (collecting cases). "When making the Rule 23 determination, district courts 'must assess all of the relevant evidence admitted at the class certification stage.'" Meyer v. U.S. Tennis Ass'n, 297 F.R.D. 75, 81 (S.D.N.Y. 2013) (quoting In re Initial Public Offerings Sec. Litig., 471 F.3d 24, 42 (2d Cir. 2006)). "A plaintiff's pleadings are taken as true for the purposes of examining a class certification motion." Id. (citing Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n.15 (2d Cir. 1978).

   2. Rule 23(a)(1): Numerosity

    *a.* *Legal Standard*

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Numerosity is presumed at a level of 40 members." Vogel v. City of New York, No. 14-CV-9171 (RMB), 2017 WL 4712791, at *3 (S.D.N.Y. Sept. 19, 2017) (quoting Consol. Rail. Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (alteration adopted)). The precise number of class members need not be established, "so long as [P]laintiffs reasonably estimate the number to be substantial." Lewis v. Alert Ambulette Serv. Corp., No. 11-CV-442

(JBW), 2012 WL 170049, at *9 (E.D.N.Y. Jan. 19, 2012) (citing Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993)).

> b.     *Application*

As Defendants do not dispute, Plaintiffs' proposed classes meet the numerosity requirement. Time cards provided by Defendants show that, in 2015 alone, fifty tipped employees and fifty-nine non-tipped employees worked at Cross Bay Diner over the course of four sampled weeks. (Pelton Decl. ¶¶ 34-35; see Sampling of 2015 Time Cards (Dkt. 55-20).) Plaintiff Luis Cardona, who worked at Cross Bay Diner and Parkview Diner from about May 2010 to February 2015, has sworn that Cross Bay Diner employed about seventy people and Parkview Diner employed about fifty people at any given time while he worked there. (L. Cardona Decl. ¶¶ 17-18.) Additionally, Cardona has sworn that there were about two or three overlapping shifts each day at both diners. (Id. ¶ 16.) Other Plaintiffs have testified that similar numbers of employees worked during their shifts as worked during Cardona's shifts. (See Rosales Dep. at 12:11-13:5, 17:9-19; Lucero Dep. at 15:10-25; Jimenez Dep. at 15:8-17:3, 35:12-36:22; Mendez Decl. ¶ 25; Chocoj Decl. ¶ 22; J. Cardona Decl. ¶ 11; Alvarez Decl. ¶ 10.) Further, a Plaintiff who worked at both diners has indicated that he observed high employee turnover. (Jimenez Dep. at 16:18-17:3, 35:12-19.) Taken together, this evidence suggests that in both class periods there were at least forty tipped and non-tipped employees. Thus, Plaintiff has satisfied his burden to show, by a preponderance of evidence, In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013), that all four of his proposed classes meet the numerosity requirement.

3.   Rule 23(a)(2): Commonality

   a.   *Legal Standard*

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question is common if it is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation ("In re Payment Card"), 330 F.R.D. 11, 52 (E.D.N.Y. 2019) (citing Walmart Stores v. Dukes, 564 U.S. 338, 350 (2011)). "[I]t is not enough to raise questions at such a high level of generality that they become common to the class." Tart v. Lions Gate Entm't Corp., No. 14-CV-8004 (AJN), 2015 WL 5945846, at *2 (S.D.N.Y. Oct. 13, 2015) (citing Dukes, 564 U.S. at 350). Instead, Plaintiffs must demonstrate "the capacity of a classwide proceeding to generate common answers apt to drive the resolution" of the case. In re Payment Card, 330 F.R.D. at 52 (quoting Dukes, 564 U.S. at 350).

"'Even a single common legal or factual question will suffice' to prove commonality." Id. (quoting Dukes, 564 U.S. at 357). "Where a question of law involves standardized conduct of the defendant to the plaintiff, a common nucleus of operative fact is typically presented and the commonality requirement is usually met." Lewis, 2012 WL 170049, at *10 (alterations adopted) (citation and quotation marks omitted). Accordingly, "[c]ommonality is usually satisfied in wage cases 'where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices.'" Chime v. Peak Sec. Plus, Inc., 137 F. Supp. 3d 183, 208 (E.D.N.Y. 2015) (quoting Lewis, 2012 WL 170049, at *10).

### b. Application

Undisputedly,[6] there are questions of law and fact common to each class, as is typical in unpaid-wage cases, see Chime, 137 F. Supp. 3d at 208. As Plaintiffs note (Mem. at 18), the members of each proposed class bring claims under the same statutory provisions, challenge the same pay practices, and raise the same issues of law and fact. (See Compl. ¶¶ 98-115 (describing Plaintiffs' six NYLL claims).) The New Tipped Employees and New Non-Tipped Employees each allege that Defendants violated the NYLL by failing to pay them minimum wage, overtime premiums, and spread-of-hours premiums, and by failing to provide them with accurate wage statements and reimbursements for uniform expenses. (See Mem. at 2 (asking the court to certify Counts Three, Four, Five, Seven, and Eight on behalf of the New Tipped Employees and New Non-Tipped Employees).) The Old Tipped Employees and Old Non-Tipped Employees each allege those same violations and also allege that Defendants illegally failed to provide them with wage notices. (See id. at 1 (asking the court to certify Counts Three through Eight on behalf of the Old Tipped Employees and the Old Non-Tipped Employees).) In proposing four separate classes, Plaintiffs have made two appropriate distinctions: (1) between tipped employees, who were allegedly paid a flat rate, and non-tipped employees, who were allegedly paid hourly rates below the minimum wage; and (2) between "old" class members, who worked at Cross Bay and Parkview (which are both owned and operated by Defendants) and were allegedly subject to more extensive labor-law violations, and "new" class members that worked at Cross Bay after the 2013 DOL investigation. (See id. at 18.)

---

[6] In their opposition brief, the Cross Bay Defendants make no arguments about Rule 23(a), but instead argue that the proposed classes do not meet Rule 23(b)(3)'s requirement that questions common to the class predominate over any questions affecting only individual members. (Opp'n at 5-8.) The Rule 23(a)(2) commonality requirement is similar, but much easier to satisfy, than the Rule 23(b)(3) "predominance" requirement. See In re Petrobras, 862 F.3d at 270 (citing, inter alia, Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997)).

With respect to each proposed class, "the proposed class members' claims arise from the same course of conduct . . . , raise common issues of law and fact . . . , and are based on the same legal theories." Morris v. Alle Processing Corp., No. 08-CV-4874 (JMA), 2013 WL 1880919, at *9 (E.D.N.Y. May 6, 2013). Accordingly, the court finds that each of Plaintiffs' four proposed classes meets Rule 23(a)(2)'s commonality requirement. See id.; see also Chime, 137 F. Supp. 3d at 208-09 (finding that class-action plaintiffs bringing NYLL claims met commonality requirement); Lin v. Benihana N.Y. Corp., No. 10-CV-1335 (RA) (JCF), 2012 WL 7620734, at *7 (S.D.N.Y. Oct. 23, 2012) (same), report & recommendation adopted, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013).

### 4.  Rule 23(a)(3): Typicality

#### a.  Legal Standard

"The typicality prong of Rule 23(a)(3) requires that 'the claims or defenses of the representative parties [be] typical of the claims or defenses of the class.'" In re Payment Card, 330 F.R.D. at 53 (quoting Fed. R. Civ. P. 23(a)(3)) . The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Id. (quoting Shahriar, 659 F.3d at 252). "The purpose of typicality is to ensure that class representatives have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." Id. (citation and internal quotation marks omitted) (quoting Floyd v. City of N.Y., 283 F.R.D. 153, 175 (S.D.N.Y. 2012)). "'Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.'" Id. (quoting In re Platinum & Palladium Commodities Litig., No. 10-CV-3617 (WHP), 2014 WL 3500655, at *9 (S.D.N.Y.

18

July 15, 2014)); see In re NASDAQ Mkt.-Makers Antitrust Litig., 169 F.R.D. 493, 509

(S.D.N.Y. 1996) (collecting cases).

> b.    *Application*

As the Cross Bay Defendants do not dispute, Plaintiffs meet the typicality requirement

for largely the same reasons that they meet the commonality requirement, see In re Payment

Card, 330 F.R.D. at 53 ("The commonality and typicality requirements often 'tend to merge into

one another, so that similar considerations animate analysis' of both." (quoting Brown v. Kelly,

609 F.3d 467, 475 (2d Cir. 2010))). The 18 Plaintiffs and the four proposed classes were

"subject to the same general employment scheme," Lee v. ABC Carpet & Home, 236 F.R.D.

193, 204 (S.D.N.Y. 2006); "seek redress for the same type of harms due to the same course of

conduct," In re Payment Card, 330 F.R.D. at 54; and represent a wide variety of employment

experiences with Defendants.[7] Further, at least one Plaintiff has attested via declaration or

deposition to the payment practices of Defendants as to each class. (Mem. at 19; see, e.g.,

Mendez Decl. ¶¶ 7, 16, 21 (pay practices as to Old Non-Tipped Employees); id. ¶¶ 8-22 (pay

practices as to Old Tipped Employees and New Tipped Employees)); L. Cardona Decl. ¶¶ 6-15.)

> 5.    Rule 23(a)(4): Adequacy of Representation

> a.    *Legal Standard*

"Named plaintiffs must fairly and adequately represent the interests of the class." Lewis,

2012 WL 170049, at *11 (citing Fed. R. Civ. P. 23(a)(4)). "Determination of adequacy typically

entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other

---

[7] (See Mendez Decl. ¶ 1 (indicating that Plaintiff Mendez was a dishwasher, busser, and server at Cross Bay from about January 2010 through November 2015, except for a seven-month period after Hurricane Sandy); Rodriguez Decl. ¶ 1 (indicating that Plaintiff Rodriguez was a cook at Cross Bay from about 2006 to about January 2015, except for during Cross Bay's post-Sandy closure, when he was a cook at Parkview); Chocoj Decl. ¶ 1 (indicating that Plaintiff Chocoj was a dishwasher, busser, and cook at Cross Bay from 2011 through March 2016, except for during the post-Sandy closure; Mem. at 6-7 (listing the employment histories of seven of the fifteen Plaintiffs that have opted in).)

members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." In re Payment Card, 330 F.R.D. at 30 (quoting Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007)). As to the first inquiry, "[o]nly a fundamental conflict will defeat the adequacy of representation requirement." Lewis, 2012 WL 170049, at *11 (citation omitted).

### b. Application

Undisputedly, the 18 Plaintiffs are adequate class representatives. They are members of the classes they seek to represent, and the court is aware of "no evidence that [their] interests are not closely aligned with those of" the Class Members. Id. at *12. Because Plaintiffs "allege a common practice or policy of unlawful labor practices, their claims will require similar legal and factual proof to those of absent class members." Id. And Plaintiff's counsel, Pelton Graham LLC, are "qualified, experienced, and able to conduct the litigation." In re Payment Card, 330 F.R.D. at 30 (quoting Cordes, 502 F.3d at 99). Pelton Graham LLC has ample experience with class and collective actions (Pelton Decl. ¶ 8); indeed, courts have regularly approved the firm's appointment as class counsel (id. ¶ 9).

### 6. Ascertainability

### a. Legal Standard

"Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable, often characterized as an 'ascertainability' requirement." In re Petrobras, 862 F.3d at 265 (citation and quotation mark omitted). "The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries." Id. at 269.

### b.    Application

Each of the four proposed classes are ascertainable. They are defined by two objective criteria: the period in which they worked at Defendants' diners and whether they were tipped hourly food service workers or non-tipped employees. (See Mem. at 1-2.) Defendants make no arguments to the contrary. Accordingly, the court finds that Plaintiffs have met the ascertainability requirement.

### 7.    Rule 23(b)(3)

#### a.    Predominance

##### i.    Legal Standard

"A district court may only certify a class under Federal Rule of Civil Procedure 23(b)(3) if 'questions of law or fact common to class members predominate over any questions affecting only individual members.'"[8] In re Petrobras, 862 F.3d at 270 (quoting Fed. R. Civ. P. 23(b)(3)). The "'predominance' requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Roseman v. Bloomberg L.P., No. 14-CV-2657 (DLC), 2017 WL 4217150, at *5 (S.D.N.Y. Sept. 21, 2017) (quoting Anchem Prods., Inc., 521 U.S. at 623). This "requirement is satisfied if: (1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof." In re Petrobras, 862 F.3d at 270 (alterations adopted) (citation and quotation marks omitted).

---

[8] "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof.'" Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (alteration adopted) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:50, at 196-97 (5th ed. 2012)).

"Rule 23(b)(3)'s predominance requirement is 'more demanding than Rule 23(a).'" Roseman, 2017 WL 4217150, at *5 (quoting Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 138 (2d Cir. 2015)).

> While a court assessing the Rule 23(a) commonality and 23(b) predominance requirements will consider similar elements—the components of the claims and defenses to be litigated, and whether generalized evidence can be offered to prove those elements on a classwide basis or whether individualized proof will be needed to establish each class member's entitlement to relief—predominance requires a further inquiry than Rule 23(a), 'into whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues.'

Id. (quoting Johnson, 780 F.3d at 138). This analysis "requires more than simply counting the number of common and individualized issues; the [c]ourt must consider the relative complexity of those issues." Royal Park Invs. SA/NV v. Bank of N.Y. Mellon, No. 14-CV-6502 (GHW), 2019 WL 652841, at *5 (S.D.N.Y. Feb. 15, 2019) (citing In re Petrobras, 862 F.3d at 271).

Courts may certify classes on specific issues but not others; for example, liability, but not damages, where damages might require more individualized inquiry. See In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 226-27 (2d Cir. 2006).

ii.     Application

Plaintiffs have met the predominance requirement with respect to both liability and damages in this case. As discussed above with respect to commonality, Plaintiffs' claims are based on pay policies that appear, based on testimony and Defendants' records, to be uniform as to each class. (See Mem. at 21-22.) Courts frequently grant certification in cases challenging whether employers' uniform pay practices violate labor laws. See Lewis, 2012 WL 170049, at *14 (collecting cases); see also Shahriar, 659 F.3d at 253 (finding class certification appropriate where there was evidence that all class plaintiffs were subject to uniform tip practices and Defendants had not denied it). This is because, in many such cases, "if plaintiffs establish that

22

defendant had a practice or policy of failing to pay prevailing wages, defendant's liability to all class members will be established." Lewis, 2012 WL 170049, at *13 (quoting Ramos v. SimplexGrinnell LP, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011)). Indeed, "'[n]umerous courts have found that wage claims are especially suited to class litigation—perhaps the most perfect questions for class treatment—despite differences in hours worked, wages paid, and wages due.'" Id. (quoting Ramos, 796 F. Supp. 2d at 359); see Masoud v. 1285 Bakery, Inc., No. 15-CV-7414 (CM), 2017 WL 448955, at *7 (S.D.N.Y. Jan. 26, 2017) ("[T]he issues to be litigated—whether the proposed class members: (1) were paid overtime wages; (2) received the service charge proceeds in full, in the form of gratuities; (3) were paid the spread-of-hours premium; and (4) were given adequate wage statements and notices—are about the most perfect questions for class treatment." (citation and quotation marks omitted)).

The Cross Bay Defendants argue that "individualized proof outweighs generalized proof in this case" because, judging from Plaintiffs' deposition testimony, the proposed classes may include some employees who used time cards to clock in and out and some who did not, and may also include some employees who received copies of their wage notices and others who did not or who claim to have signed blank papers on which wage notices were printed (Opp'n at 7-8.) This argument is unavailing. First, Plaintiffs bring wage-notice claims only on behalf of the "old" classes, not the "new" classes. (See Mem. at 1-2.) The evidence indicates that Plaintiffs only received wage notices during the New Period. (Mem. at 10; see Reyes Flores Wage Notice; Luis Cardona Wage Notice.) Second, slight differences in Plaintiffs' experiences with time cards do not preclude class certification. Plaintiffs allege that all Class Members were systematically underpaid due to the same kinds of timekeeping errors, and Plaintiffs have provided testimony and time records corroborating these claims. Inconsistencies in the methods

that led to the errors "are easily manageable and do not defeat predominance." Lewis, 2012 WL 170049, at *14; see Royal Park Invs. SA/NV, 2019 WL 652841, at *5 (stating that, in assessing whether common questions predominate over individual ones, courts "must consider the relative complexity of those issues" (citing In re Petrobras, 862 F.3d at 271)); Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 148 (S.D.N.Y. 2002) ("[Even if] different vessels and departments kept track of overtime using different methods, differences in departments, job duties, and even factual variations in plaintiffs' claims should not defeat class certification in this case, where all plaintiffs claim they were denied overtime pay while working aboard [the defendant's] vessels.").

This case may require some individualized inquiries as to damages calculations. (See Reply at 7 (acknowledging this).) But "it is well-settled that individualized damages calculations do not defeat predominance." Johnson v. Brennan, No. 10-CV-4172 (CM), 2011 WL 4357376, at *6 (S.D.N.Y. Sept. 16, 2011) (citing Frank v. Eastman Kodak Co., 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (collecting cases)); see Lewis, 2012 WL 170049, at *14 ("Although each class member will have different damage claims depending on the length and time of employment, such individualized questions are easily manageable and do not defeat predominance." (citation omitted)); Shabazz v. Morgan Funding Corp., 269 F.R.D. 245, 250-51 (S.D.N.Y. 2010) ("Any class action based on unpaid wages will necessarily involve calculations for determining individual class member damages, and the need for such calculations [does] not preclude class certification.") This remains true even where damages calculations are made especially difficult by the defendants' failure to maintain accurate timekeeping records. See, e.g., Perez v. Isabella Geriatric Center, Inc., 2016 WL 5719802, at *4 (S.D.N.Y. 2016) ("Damages arising from unrecorded time do not necessarily require individualized inquiries, because [p]laintiffs are not

required to prove such damages with exactitude . . . plaintiffs are permitted to 'introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records.'" (quoting Tyson Foods, 136 S. Ct. at 1047)).

The Cross Bay Defendants have not proffered any reasons why damages calculations in this case would be particularly complex. If it later becomes clear that this case is not manageable as a class action, the court can decertify the class. See Perez, 2016 WL 5719802, at *4 ("The Court has the 'ability to manage the litigation as it develops,' and if [p]laintiffs ultimately fail to proffer a workable trial plan, then the Court can decertify the class (quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997), and citing Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 776 (7th Cir. 2013))).

> ### b. Superiority
>
> #### i. Legal Standard

"For Rule 23(b)(3) certification to be appropriate, a class action must be the most fair and efficient method of resolving disputes." Lewis, 2012 WL 170049, at *14 (quotation marks omitted).

> Under Rule 23(b)(3), courts must consider four non-exclusive factors:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Id. (citing Fed. R. Civ. P. 23(b)(3)(A)-(D)). "The class action device is particularly well-suited in situations where 'plaintiffs are allegedly aggrieved by a single policy of defendants since

many nearly identical litigations can be adjudicated in unison." Id. (quoting In re Nassau, 461 F.3d at 228 (alteration adopted)).

ii.    Application

"In this case, a class action is superior to other available methods, since [Plaintiffs' NYLL claims] are nearly identical to the FLSA claims, which will be tried collectively in this [c]ourt." Id. (citation and quotation marks omitted). "Moreover, trying this action collectively allows for a more cost-efficient and fair litigation of common disputes than requiring each plaintiff to prosecute his or her own individual action." Id. (citation and quotation marks omitted) (alteration adopted).

"It is unlikely that any potential class member has a particular interest in bringing a separate suit." Id. at *15. "The liability issues are common" within each of the four proposed classes. Id. As far as the court is aware, the Class Members have expressed no interest in individually controlling the prosecution of their claims. (See Mem. at 23.) Further, the amounts of damages at issue for most Class Members appear "not significant enough to indicate that any individual would shoulder the burden and cost of vast and complex litigation." Lewis, 2012 WL 170049, at *15 (citation omitted) (alteration adopted). All Class Members' claims arose from events in this district, making resolution by this court appropriate. See id. Finally, nothing in the record suggests that this case will be particularly difficult to manage as a class action.

Accordingly, "[a] class action is superior to individual litigation on these issues." Id.

C.    Class Counsel

1.    Legal Standard

A court certifying a class must ensure that it will be adequately represented by class counsel. See Fed. R. Civ. P. 23(g). It must consider:

(i) The work counsel has done in identifying or investigating potential claims in the action;

(ii) Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) Counsel's knowledge of the applicable law; and

(iv) The resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). "The adequacy of counsel requirement is satisfied where the class attorneys are experienced in the field or have demonstrated professional competence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case." Lewis, 2012 WL 170049, at *15 (citation and quotation marks omitted).

      2.   Application

Plaintiffs' counsel meets all the relevant criteria. They have ample experience with complex wage and hour litigation and with class and collective actions, including litigation on behalf of New York food service employees, and their briefs in this case demonstrate professional competence. (See Pelton Decl. ¶¶ 5, 8.) See Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii). Courts in this circuit have regularly approved their appointment as class counsel in other cases. (Pelton Decl. ¶ 9). See Fed. R. Civ. P. 23(g)(1)(A)(ii). Counsel have also shown they are able to commit the necessary resources to represent all Class Members; indeed, they appear to have already done substantial work investigating Plaintiffs' claims. (Pelton Decl. ¶ 7.) See Fed. R. Civ. P. 23(g)(1)(A)(i), (iv). Thus, having considered the 23(g)(1)(a) factors, the court finds that the four proposed classes will be adequately represented by Plaintiffs' counsel.

## III.    CONCLUSION

Plaintiffs' motion (Dkt. 53) for an order affirming that the court will exercise supplemental jurisdiction over their NYLL claims and certifying four classes—the Old Tipped Employees, Old Non-Tipped Employees, New Tipped Employees, and New Non-Tipped Employees—is GRANTED.  Plaintiffs Catalino Mendez, Eduardo Chocoj, and Israel Rodriguez are appointed as class representatives.  Pelton Graham LLC is appointed as class counsel.  The parties are DIRECTED to proceed with class-wide discovery and to confer regarding the form of class notice and the production of Class Members' contact information before submitting a proposed notice to the court.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     June 14, 2019

NICHOLAS G. GARAUFIS
United States District Judge