UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CATALINO MENDEZ, EDUARDO CHOCOJ,
and ISRAEL RODRIGUEZ, *individually and on
behalf of all others similarly situated*,

                      Plaintiffs,

              v.

MCSS REST. CORP., *Jointly and Severally*,
AL-KEN CORP., *doing business as* Cross Bay
Diner, MIKO ENTERPRISES, LLC, *doing
business as* Parkview Diner, MICHAEL
SIDERAKIS, *Jointly and Severally*, CHRISTOS
SIDERAKIS, *Jointly and Severally*, KONSTANTINOS
SIKLAS, *Jointly and Severally*,

                  Defendants.
--------------------------------------------------------x

**MEMORANDUM AND ORDER**

16-CV-2746 (RPK) (RLM)

RACHEL P. KOVNER, United States District Judge:

      Plaintiffs Catalino Mendez, Eduardo Chocoj, and Israel Rodriguez bring this collective

action against defendants MCSS Rest. Corp. ("MCSS"), Al-Ken Corp. ("Al-Ken"), Miko

Enterprises, LLC ("Miko"), Michael Siderakis, Christos Siderakis, and Konstantinos Siklas

alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the

New York Labor Law ("NYLL"), N.Y. Lab. L. § 650 *et seq.*  After the lead plaintiffs filed their

amended complaint, sixteen additional plaintiffs joined the action.  *See* Consent to Become Party

in a Collective Action (Dkts. #24-31, 33-39, 44).  Plaintiffs have moved for summary judgment

on defendants' failure to pay minimum and overtime wages and spread-of-hours compensation,

failure to provide adequate wage notices and statements, and failure to reimburse uniform

expenses.  For the reasons set out below, only opt-in plaintiff Reyes Flores has established that

summary judgment is warranted for his overtime and deficient wage statement claims against

MCSS and Siderakis.  The motion for summary judgment is otherwise denied.

**BACKGROUND**

I.      **Factual Background**

The following facts are taken from plaintiffs' Rule 56.1 statement and relevant portions of the record and are undisputed unless otherwise noted.

Parkview Diner ("Parkview") and Cross Bay Diner ("Cross Bay") are restaurants in New York.  Pls.' Rule 56.1 Statement ¶¶ 5, 8 ("Pls.' Statement").  Defendant MCSS operates Cross Bay, and defendant Al-Ken is a part owner of the property where Cross Bay is located.  *Id.* ¶¶ 5-6.  Defendants Michael Siderakis and Christos Siderakis each owned fifty percent of MCSS from July 2001 until March 2013, when Christos sold his share to Michael.  *Id.* ¶ 11.  After the sale, Michael Siderakis became the owner and Chief Executive Officer of MCSS and Al-Ken.  *Id.* ¶ 2.

Miko Enterprises operated Parkview from April or May 2010 until July 2014.  *Id.* ¶ 8.  Michael Siderakis and Konstantinos Siklas owned sixty and forty percent of Miko, respectively.  *Id.* ¶ 10.  They sold Parkview in July 2014.  *Ibid.*

Cross Bay is usually open twenty-four hours per day, 365 days per year.  *Id.* ¶ 23.  But in November 2012, after Hurricane Sandy, the diner closed for about six months.  *Id.* ¶ 24.  During that time, many Cross Bay employees went to work at Parkview.  *Id.* ¶ 25.

At Parkview, defendants tracked employee hours with timecards and a punch clock.  *Id.* ¶ 37.  Siklas transferred information from the timecards to a document that he faxed to Parkview's payroll processing company.  *Id.* ¶ 35.  Defendants produced wage and hour records for one Parkview employee, plaintiff Nicoles Jimenez, for the period between January 1, 2010 and December 31, 2012.  *Id.* ¶ 31.  But defendants possess no other Parkview records.  *Id.* ¶ 33.  Defendants did not notify Parkview employees about their hours worked, hourly rates, or tip credits.  *Id.* ¶ 52.  Instead, defendants assumed that their payroll company would issue paychecks that showed employee hours.  *Ibid.*  Siderakis and Siklas gave inconsistent accounts about

2

whether Parkview employees were paid in cash.  *See id.* ¶ 56.  Defendants could not provide further information about Parkview's wage policies and practices.  *Id.* ¶ 51.

At Cross Bay, defendants also used timecards to track employee hours.  *Id.* ¶ 46.  The timecards were stamped when employees clocked in and out of work.  *See ibid.*  Managers added handwritten notes to the timecards about employee names and positions, hours paid at regular and overtime rates, and deductions for meals and uniforms.  *Ibid.*  In addition to those edits, managers often reduced the hours recorded on the timecards.  *See ibid.*; *id.* ¶ 65.

Cross Bay took a tip credit and paid employees who received tips the tipped minimum wage.  *Id.* ¶ 59.  Some non-tipped employees received the minimum wage.  *Id.* ¶ 60.  The parties dispute whether some employees received a flat-rate salary and whether Cross Bay paid overtime wages and spread-of-hours compensation.  *Id.* ¶¶ 62-64; Defs.' Resp. to Pls.' Rule 56.1 Statement at 19-20 (Dkt. #99) ("Def.'s Resp.").  Siderakis testified that Cross Bay provided "hire sheets" to employees when they were hired and in each subsequent year.  Pl.'s Statement ¶ 73. The form included a box to alert employees to an employer's tip credit, but Cross Bay did not check the box.  *Ibid.*

Cross Bay paid some employees by check, and those employees received paystubs that recorded their hours instead of timecards.  *Id.* ¶ 50.  The paychecks documented the net wages paid to employees but not their hourly rates, hours worked, tip credits, or deductions from wages. *Id.* ¶ 70.  Some Cross Bay employees received cash in envelopes, and those employees received copies of their timecards.  *Id.* ¶¶ 68-69.

Because Hurricane Sandy destroyed Cross Bay's documents, defendants produced no records for Cross Bay prior to 2013.  *Id.* ¶ 42.  Defendants did produce Cross Bay timecards, "tip

sign-off reports," schedules, paychecks, and payslips that date from after Hurricane Sandy.  *Id.* ¶ 43.

Parkview and Cross Bay required their non-management employees to wear specific clothes at work.  *Id.* ¶¶ 57, 71.  Parkview provided laundry services for employees who worked in the back of the house but not those who worked in the front of the house.  *Id.* ¶ 57.  Parkview employees were not reimbursed for maintaining their work clothes.  *Ibid.*  Similarly, Cross Bay did not reimburse employees for maintaining their work clothes.  *Id.* ¶ 71.

Plaintiffs' Rule 56.1 Statement makes factual assertions about defendants' labor practices with respect to ten plaintiffs.

Plaintiff Denis Rosales testified that he worked as a cook at Cross Bay from June 2013 to June 2014.  *Id.* ¶ 118.  Defendants claim that Rosales worked one week at Cross Bay in 2013.  Defs.' Resp. at 35.  The parties dispute how many hours Rosales worked, whether he was paid a flat or hourly rate, whether he was paid overtime wages, whether he received a wage statement documenting his hourly rate or hours worked, whether he received a wage notice setting forth his wage rate, and the amount that Cross Bay deducted for meals.  Pls.' Statement ¶¶ 119-20, 122-24, 126; Defs.' Resp. at 35-37.  Rosales had to launder his own work clothes.  Pls.' Statement ¶ 125.

Cross Bay employed plaintiff Marco Bonola Lucero as a cook and grill man between 2014 and 2015.  *Id.* ¶ 128.  Bonola usually worked sixty hours per week.  *Id.* ¶ 129.  The parties dispute whether Bonola was paid a flat weekly or hourly rate, whether he was paid overtime wages, and whether he received a wage statement documenting his hourly rate or hours worked.  *Id.* ¶¶ 130, 132-33; Defs.' Resp. at 37-39.  Bonola had to launder his own work clothes, and Cross Bay deducted meal charges from his wages.  Pls.' Statement ¶¶ 134-35.

4

Plaintiff Nicoles Jimenez worked as a cook at Parkview between 2010 and late 2012 or early 2013 and as a cook at Cross Bay from early June 2013 to 2015. *Id.* ¶ 137. The parties dispute how many hours Jimenez worked, whether he was paid a flat weekly or hourly rate, whether he was paid overtime wages, whether he received a wage notice or was required to sign "blank pages," and the amount that Cross Bay deducted for meals. *Id.* ¶¶ 138-39, 141, 143-44; Defs.' Resp. at 39-41. Jimenez had to launder his own work clothes. Pls.' Statement ¶ 142.

Plaintiff Reyes Flores currently works as a cook at Cross Bay. *Id.* ¶ 146. He started in that position in 2006. *Ibid.* After Hurricane Sandy, he worked as a cook at Parkview for about eleven months. *Ibid.* The parties dispute how many hours Flores worked, whether he was paid a flat weekly or hourly rate at Cross Bay, whether he was paid overtime wages, whether his paystubs accurately stated his total hours worked or wages received, whether he received wage statements, and the amount that Cross Bay deducted for meals. *Id.* ¶¶ 147-48, 150, 153-54; Defs.' Resp. at 42-44.

Plaintiffs Catalino Mendez, Eduardo Chocoj, Israel Rodriguez, Jose Cardona, and Rigoberto Alvarez, whose primary language is Spanish*,* have each submitted English-language declarations in support of their FLSA and NYLL claims. *See* Decl. of Belinda Herazo ¶¶ 4-6 (Dkt. #104-1). Plaintiff Luis Cardona submitted an undated declaration in support of his claims. The declarations generally describe how plaintiffs worked more than forty hours per week without overtime compensation, were not paid the minimum wage and spread-of-hours compensation, did not receive wage notices and wage statements, and were not reimbursed for uniform expenses. *See* Decl. of Brent E. Pelton Ex. 9 (Dkt. #89-9); *id.* Ex. 10 (Dkt. #89-10); *id.* Ex. 11 (Dkt. #89-11); *id.* Ex. 12 (Dkt. #89-12); *id.* Ex. 13 (Dkt. #89-13); *id.* Ex. 14 (Dkt. #89-14). Defendants generally dispute those claims. *See* Defs.' Resp. at 25-35, 44-52.

## II.       Procedural Background

On May 31, 2016, Mendez, Chocoj, and Rodriguez filed a complaint on behalf of themselves and similarly situated persons bringing claims under the FLSA and the NYLL.  *See* Compl. (Dkt. #1).  The complaint alleges that defendants failed to pay plaintiffs minimum and overtime wages, did not pay an extra hour's pay on days when plaintiffs worked more than ten hours, failed to provide wage notices and wage statements, and did not reimburse plaintiffs for purchasing required uniforms or maintaining those uniforms.  *Id.* ¶¶ 90-115.  Plaintiffs seek injunctive relief and damages.  *Id.* at 23-25 ("Prayer for Relief").  Sixteen other plaintiffs consented to join the collective action, including Rosales, Bonola, Jimenez, Flores, Luis Cardona, Jose Cardona, and Alvarez.  *See* Consent to Become Party in a Collective Action (Dkts. #24-31, 33-39, 44).

Plaintiff subsequently moved for class certification and Judge Garaufis certified four classes: (i) tipped employees who worked at Cross Bay between May 31, 2010 and its closure due to Hurricane Sandy and who worked at Parkview between May 31, 2010 and its sale in July 2014; (ii) non-tipped employees who worked at Cross Bay and Parkview during those time periods; (iii) tipped employees who worked at Cross Bay between its post-hurricane reopening around May 24, 2013 and the present; and (iv) non-tipped employees who worked at Cross Bay after its post-hurricane reopening.  *See* Mot. for Class Certification (Dkt. #53); Mem. & Order dated June 17, 2019 (Dkt. #67).

At the close of discovery, plaintiffs moved for summary judgment on defendants' liability for all the FLSA and NYLL violations alleged in the complaint.  *See* Pls.' Mem. in Supp. of Mot. for Summ. J. (Dkt. #87) ("Pls.' Mem.").

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where "the burden of persuasion at trial would be on the non-moving party," the movant "may satisfy his burden of production" either "(1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers[.]" Fed. R. Civ. P. 56(c)(1)(A). I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted).

**DISCUSSION**

There is no genuine dispute of material fact that MCSS and Miko are covered under the FLSA; that Siklas qualifies as an employer at Parkview, and that Siderakis qualifies as an employer at Cross Bay.  But except on Flores's Cross Bay overtime and wage statement claims, plaintiffs have failed to show that no genuine dispute exists about defendants' liability. Therefore, summary judgment is granted to Flores on his overtime and wage statement claims against MCSS and Siderakis and denied on all other claims.

I.     **Coverage**

       A.     **FLSA**

The FLSA generally obligates an employer to pay minimum and overtime wages to an employee who "is employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. §§ 206(a), 207(a).  That category of liability under the FLSA is called "enterprise" coverage.  *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96-97 (2d Cir. 2009). Once a plaintiff establishes enterprise coverage, "liability under the FLSA extends to any 'employer.'"  *Gordon v. Gen. Prop. Mgmt. Assocs., Inc.*, 496 F. Supp. 3d 830, 836 (S.D.N.Y. 2020) (quoting 29 U.S.C. § 216(b)).  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

            1.  **Enterprise Coverage**

An enterprise is liable for wage violations only if it was "engaged in commerce or in the production of goods for commerce."  29 U.S.C. §§ 206(a), 207(a).  An enterprise is "engaged in commerce or in the production of goods for commerce" if it "(i) has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce

8

by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1).

Defendants do not dispute that MCSS and Miko qualify as enterprises under the FLSA. *See* Pls.' Statement ¶¶ 27, 28, 30 (allegations regarding Cross Bay's and Parkview's revenue); *see, e.g.*, *Drice v. My Merchant Servs., LLC*, No. CV 2015-0395 (MKB) (MDG), 2016 WL 1266866, at *4 (E.D.N.Y. Mar. 4, 2016) (collecting cases inferring interstate-commerce element is satisfied from the nature of the employer's business), *report and recommendation adopted by* 2016 WL 1266948 (E.D.N.Y. Mar. 31, 2016).

Defendants argue that the summary judgment should not be granted against MCSS because its pending bankruptcy petition stayed all actions against it. Defs.' Mem. in Opp'n to Pls.' Mot. for Summ. J. at 3 (Dkt. #100) ("Def.'s Mem."). That argument is immaterial because after defendants filed their opposition, the bankruptcy petition was dismissed. *See* Pls.' Letter dated Jan. 5, 2021 (Dkt. #106).

Defendants also argue that summary judgment should not be granted against Al-Ken because plaintiffs have not adduced evidence that Al-Ken is liable under the FLSA. Defs.' Mem. at 3-4. Plaintiffs do not appear to move for summary judgment against Al-Ken, and summary judgment against that defendant would accordingly be unwarranted.

## 2. Employer Liability

For individuals within an enterprise, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees." *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (citing *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). "A person exercises operational control over employees if his or her role within

the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Ibid.* (quoting *Irizarry*, 722 F.3d at 110).

Courts assess whether an individual defendant has the requisite control on "a case-by-case basis" by reviewing "the totality of the circumstances." *Irizarry*, 722 F.3d at 104. Four factors are often relevant: whether the individual (1) "had the power to hire and fire" employees, (2) "supervised and controlled employee work schedules or conditions of employment," (3) "determined the rate and method of payment," and (4) "maintained employment records." *Ibid.* (quoting *Carter v. Dutchess Community Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). These factors are not exclusive, *see id.* at 110, and no one factor is dispositive, *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

On the undisputed facts in this case, Siklas meets the standard for employer liability under the FLSA. At Parkview, Siklas made hiring decisions, determined wage rates, controlled the payroll, and ran the restaurant's day-to-day operations. Pls.' Statement ¶¶ 14-15, 20; Defs.' Resp. at 5. Those responsibilities directly affected conditions of employment at Parkview. *See Tapia*, 906 F.3d at 61. Siklas had enough undisputed operational control over Parkview employees to render him an employer under the FLSA. *See, e.g.*, *Jeong Woo Kim v. 511 E. 5TH Street, LLC*, 133 F. Supp. 3d 654, 666 (S.D.N.Y. 2015).

Likewise, Michael Siderakis had operational control over the employees at Cross Bay. It is undisputed that Siderakis hires, fires, and supervises Cross Bay employees, set schedules and payroll policies, pays employees, and responds to issues involving employees. Pls.' Statement ¶ 13. For reasons similar to those stated above, Siderakis is an employer at Cross Bay under the FLSA.

10

But factual disputes preclude summary judgment on Siderakis's liability as an employer at Parkview.  The parties offer divergent accounts of the extent to which Siderakis made hiring decisions, determined Parkview's policies, and supervised its operations.  *See* Pls.' Statement ¶¶ 14-15, 18-19; Defs.' Resp. at 4-6.  For example, Siderakis testified that he did not have any duties at Parkview, sometimes discussed the restaurant's finances and operations with Siklas, did not know where employment records were located, and attended hiring interviews but did not make hiring decisions.  Decl. of Brent E. Pelton Ex. 1 at 23:14-16, 25:12-26:5 (Dkt. #89-1); *id.* Ex. 2 at 10:4-11:3, 12:5-8 (Dkt. #89-2); *see id.* Ex. 3 at 19:6-7 (Dkt. #89-3).  In addition, Siderakis testified both that he visited Parkview once or twice a year and that he could not recall how often he visited.  *See id.* Ex. 1 at 23:20-22; *id.* Ex. 2 at 11:4-10.  While Siderakis portrayed his involvement at Parkview as minimal, Siklas testified that Siderakis helped implement operating policies.  *Id.* Ex. 3 at 10:18-11:3.  And contrary to Siderakis's testimony that he did not make hiring decisions at Parkview, Jimenez and Flores testified that Siderakis hired them to work at Parkview after Hurricane Sandy closed Cross Bay.  *Id.* Ex. 7 at 8:2-9:5 (Dkt. #89-7); *id.* Ex. 8 at 9:2-9:24 (Dkt. #89-8).  Moreover, Siderakis testified that he did not dictate how much Parkview paid the former Cross Bay employees, yet Siklas testified that Siderakis told him to pay ex-Cross Bay employees at the Cross Bay rate.  Decl. of Lawrence F. Morrison Ex. 2 at 51:22-52:8 (Dkt. #101-2); Decl. of Brent E. Pelton Ex. 3 at 40:5-9.

In short, there are factual disputes about Siderakis's power to hire, fire, and supervise employees and to set their rates of pay, as well as the extent of his control over conditions of employment.  *See Irizarry*, 722 F.3d at 104-05.  From the record evidence, I cannot conclude that Siderakis is an employer under the FLSA as a matter of law.  *See Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT) 2011 WL 317971, at *7 (E.D.N.Y. Jan. 28, 2011);

*see also Marcelino v. 374 Food, Inc.*, No. 16-CV-6287 (KPF), 2018 WL 1517205, at *15 (S.D.N.Y. Mar. 27, 2018).

Plaintiff argues that Siderakis had the authority to determine conditions of employment at Parkview even if he did not exercise it.  Pls.' Mem. at 24.  Under the FLSA, an employer need not engage in "continuous monitoring of employees," and sufficient control may be "exercised only occasionally," *Herman*, 172 F.3d at 139.  For example, a corporate shareholder qualified as an employer where he hired employees, assigned employees to work sites, directed review of employment forms, and sometimes signed payroll checks.  *Id.* at 140.  Here, the parties have presented conflicting testimony about whether Siderakis exercised occasional control over Parkview's operations.  The extent to which Siderakis could have or did hire Parkview employees and set their salaries is a dispute for the jury to resolve, not the Court on summary judgment.  As such, summary judgment is denied with respect to Siderakis's liability at Parkview.

### B.    NYLL

Under the NYLL, an "'[e]mployer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."  N.Y. Lab. L. § 190(3).  Although the New York Court of Appeals has not settled whether "the tests for 'employer' status are the same under the FLSA and the NYLL," *Irizarry*, 722 F.3d at 117, district courts in the Second Circuit "have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition by the FLSA," *Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.,* 397 F. Supp. 3d 249, 263 (E.D.N.Y. 2019) (citation omitted).

For the reasons stated above, MCSS, Miko, and Siklas are liable as employers under the NYLL.  Siderakis is an employer at Cross Bay for purposes of the NYLL, but summary

judgment is denied with respect to plaintiff's NYLL claims against Siderakis at Parkview. Because plaintiff failed to present evidence about Al-Ken's status as an employer under the NYLL, summary judgment is denied on plaintiff's NYLL claims against Al-Ken.

## II.      Wages and Hours Claims

### A.      Minimum Wage Claims

To establish liability on a wage claim under the FLSA, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017) (citation omitted), *aff'd*, 752 F. App'x 33 (2d Cir. 2018) (summary order).

The FLSA requires employers to "pay the higher of the federal or state minimum wage applicable during any given time period." *Reyes v. Lincoln Deli Grocery Corp.*, No. 17-CV-2732 (KBF), 2018 WL 2722455, at *5 (S.D.N.Y. June 5, 2018) (citing 29 U.S.C. § 218(a)). The FLSA's limitations period for minimum wage and overtime claims is two years, unless the employer's violation is willful, in which case the period is three years. *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015).

Under NYLL § 652(1), "employers must pay employees at least minimum wage." *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 655 (E.D.N.Y. 2020). "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages." *Juan v. Son of Polisi, Inc.*, No. 19-CV-04662 (LDH) (PK), 2021 WL 2179344, at *7 (E.D.N.Y. Jan. 24, 2021) (citation omitted) (report and recommendation); *see Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 316 (S.D.N.Y. 2014). The statute of limitations for NYLL wage claims is six years, *see* N.Y. Lab. L. § 663, and so plaintiffs may bring claims reaching as far back as May 31, 2010.

Defendants were required to pay the federal minimum wage until December 31, 2013, and then were required to pay the New York minimum wage.  Since 2009, the federal minimum wage has been $7.25 an hour.  29 U.S.C. § 206(a)(1).  During the period from May 31, 2010 to December 31, 2013, New York minimum wage was $7.15, below the $7.25 federal level.  N.Y. Lab. L. § 652.  Between December 31, 2013 and December 31, 2014, the New York minimum wage was $8.00, between December 31, 2014 and December 31, 2015, $8.75, and between December 31, 2015 and December 31, 2016, $9.00.  *Ibid.*  Between December 31, 2016 and December 31, 2017, employers with eleven or more employees had to pay an $11.00 minimum wage, and those with ten or less employees had to pay $10.50.  *Id.* § 652(1)(a).

"The remaining question . . . is whether [p]laintiffs' 'regular rate of pay' was less than the applicable minimum wage."  *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020).   Under the FLSA, the regular rate of pay is calculated by "dividing an employee's total remuneration for employment . . . in any workweek by the total number of hours actually worked."  *Ibid.* (citation omitted).  "There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours."  *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 382, 385 (E.D.N.Y. 2012) (citation omitted).  Under the NYLL, the regular rate of pay of a restaurant employee is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  12 N.Y.C.R.R. § 146-3.5(b); *see Villanueva*, 500 F. Supp. 3d at 235.

### 1.  Evidentiary Standard

To calculate plaintiffs' rate of pay, I need to determine whether plaintiffs' amount of work and compensation should be inferred from their declarations and deposition testimony or whether defendants have produced contrary record evidence.  As the Supreme Court held in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), "[w]hen the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records."  But "where the employer's record are inaccurate or inadequate . . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Ibid.*; *see Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 252 (S.D.N.Y. 2021).  "[E]stimates based on [the employee's] own recollection" suffice.  *Chichinadze*, 517 F. Supp. 3d at 255 (internal quotation marks and citation omitted).  If the employee makes a sufficient showing, the burden shifts to the employer to produce "evidence of the precise amount of work performed or . . . evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687-88; *see Chichinadze*, 517 F. Supp. 3d at 252.

Like the FLSA, the NYLL places the responsibility on an employer to maintain time records.  *See* N.Y. Lab. L. §§ 195(4), 196-a; *see Chichinadze*, 517 F. Supp. 3d at 253.  Claims under the NYLL are governed by a burden-shifting framework similar to that utilized under the FLSA.  *Chichinadze*, 517 F. Supp. 3d at 253.  When an employer fails to maintain accurate and complete records, the plaintiff's burden is to submit evidence from which violations of the NYLL and damages may be reasonably inferred.  *See id.* at 252.  If the plaintiff makes a sufficient showing, the burden shifts to the employer.  As compared with the FLSA, though, the NYLL puts "a more stringent burden of proof" on the employer "who fails to keep accurate

records." *Id.* at 253. The employer must establish "by a preponderance of the evidence that it in fact paid its employees" properly, and the employer cannot carry that burden "by undermining the reasonableness of an employee's evidence." *Ibid.* (citations omitted). Where an employer cannot satisfy its burden under the FLSA, it cannot satisfy its more demanding burden under the NYLL, either. *Ibid.*

Defendants argue that the *Mt. Clemens Pottery* burden-shifting framework only applies when defendants have moved for summary judgment or at trial. Defs.' Mem. at 11. District courts in this circuit disagree about whether burden-shifting is also appropriate where a plaintiff moves for summary judgment on defendant's liability under the FLSA. *Compare Chichinadze*, 517 F. Supp. 3d at 255; *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406 (LJL), 2021 WL 3540671, at *13 (S.D.N.Y. Aug. 10, 2021) *with Severino v. 436 W. L.L.C.*, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *7 (S.D.N.Y. Mar. 19, 2016); *Medina v. Ricardos Mech., Inc.*, No. 16-CV-1407 (NGG) (JO), 2018 WL 3973007, at *5 (E.D.N.Y. Aug. 20, 2018); *Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812 (ARR) (VMS), 2013 WL 12363005, at *6 (E.D.N.Y. Feb. 12, 2013); *cf. Shibetti v. Z Rest., Diner & Lounge, Inc.*, 478 F. Supp. 3d 403, 411 (E.D.N.Y. 2020). The Second Circuit has not expressly confirmed that *Mt. Clemens Pottery* applies in the context of a plaintiff's motion for summary judgment on liability. However, the Second Circuit has described the *Mt. Clemens Pottery* holding as a standard for the plaintiff's "burden of proof." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986); *see Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) ("[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary

judgment motions."). Therefore, I will apply the burden-shifting framework to plaintiffs' motion.

### 2. Plaintiffs' Declarations

Defendants argue that the Court should not consider the plaintiffs' declarations submitted as exhibits in support of their motion. Defs.' Mem. at 13-15. Defendants are correct that the declarations are inadmissible on summary judgment because they are undated or were submitted by Spanish-speakers who did not provide adequate support for their English-language declarations.

Luis Cardona's undated declaration is not admissible because it does not qualify as sworn under 28 U.S.C. § 1746. An unsworn declaration must be "dated," 28 U.S.C. § 1746, and Cardona's is not. Failure to date an unsworn declaration is "technical noncompliance" with Section 1746. *Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 253 (E.D.N.Y. 2014). While some courts have exercised their discretion to "overlook" this "procedural technicality," *U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Envtl. Univ. Servs., Inc.*, No. 11-CV-730 (CS), 2014 WL 4652712, at *3 n.2 (S.D.N.Y. Sept. 2, 2014), I decline to do so here. Plaintiffs have not addressed Cardona's technical noncompliance in their reply, and they have not taken the opportunity to resubmit a compliant declaration. *See Dilonez*, 35 F. Supp. 3d at 253. Under these circumstances, Luis Cardona's document "is not admissible as an unsworn declaration." *William v. Keisler*, No. 07-CV-503 (ARR), 2007 WL 9723294, at *4 (E.D.N.Y. Oct. 30, 2007); *see also Barr v. City of New York*, No. 16-CV-5266 (CM), 2018 WL 3407705, at *3 (S.D.N.Y. July 2, 2018).

Mendez, Chocoj, Rodriguez, Jose Cardona, and Rigoberto Alvarez's declarations are also inadmissible. Those declarants are all Spanish speakers who signed English-language declarations. Decl. of Belinda Herazo ¶ 5. "When, as here, a party relies on an English-language

17

declaration of a person whose native language is not English, that party must also submit documents sufficient to establish that [the declarant] understood what he was signing." *Heredia v. Americare, Inc.*, No. 17-CV-6219 (RWL), 2020 WL 3961618, at *4 (S.D.N.Y. July 13, 2020) (internal quotation marks, and citation omitted); *Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016).   For example, the party can submit a certified translation read by the declarant before signing the English-language version, a signed copy of a non-English declaration accompanied by a translation, or a separate declaration from the declarant indicating that the document has been translated. *Ibid.* (collecting cases).

Plaintiffs have not submitted any such evidence.   Instead, plaintiffs submitted a declaration from a bilingual paralegal, Belinda Herazo, who works at the law firm of plaintiffs' counsel.   Decl. of Belinda Herazo ¶¶ 1-3.   Herazo states that she has "been in charge of translating into Spanish . . . documents related to the action" for the plaintiffs, "most of whom speak Spanish as their native language." *Id.* ¶ 4.   Herazo also supervised other bilingual paralegals. *Id.* ¶ 5.   According to Herazo, one of those other paralegals drafted the declarations of Mendez, Chocoj, Rodriguez, Jose Cardona, and Rigoberto Alvarez under Herazo's supervision. *Ibid.*   Of the declarants, only Luis Cardona is fluent in English. *Id.* ¶ 6.

Herazo's declaration is not sufficient to establish that the declarants knew what they were signing.   Plaintiffs do not submit certified translations that were read by the declarants or Spanish-language declarations signed by the declarants.   Nor do plaintiffs submit additional declarations from the declarants establishing that the documents were translated.   A statement from one translator that declarants received translations from a different translator does not satisfy the Court that the declarants comprehended the English-language declarations. *Cf. Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 17-CV-816 (LGS), 2018 WL 4405606, at *3

(S.D.N.Y. Sept. 17, 2018).  Even if a court may disregard technical improprieties in English-language declarations from Spanish-speaking plaintiffs, *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 119 (S.D.N.Y. 2011), I am not persuaded to disregard the defects here, when plaintiffs' basis for finding the declarations reliable is a declaration from a paralegal who did not herself translate the declarations.

Moreover, none of the declarations originally submitted to the Court acknowledged that the declarant had reviewed the English-language declaration only in translated form.  Such a lack of transparency, coupled with plaintiffs' failure to submit adequate support, *see, e.g.*, *Heredia*, 2020 WL 3961618, at *4, raises questions concerning whether either plaintiffs "did not understand [the] declaration[s] [that] [they] [were] signing or that [p]laintiff[s'] counsel acted improperly with respect to [the] declaration[s]," *Cuzco v. Orion Builders, Inc.*, 477 F Supp. 2d 628, 634 (S.D.N.Y. 2007).  Therefore, I will not consider the declarations of Mendez, Chocoj, Rodriguez, Jose Cardona, and Rigoberto Alvarez on summary judgment.[*]

### 3.  Tip Credit

Federal and state tip credit provisions permit an employer to pay qualifying employees less than the minimum wage if they receive tips.  *See* 29 U.S.C. §§ 203(m), 206(a)(1); 12

---

[*] These declarations are not properly excluded on the separate ground, also argued by defendants, that the declarations do not include required language for an unsworn declaration.  For an unsworn declaration to be admissible, Section 1746 requires that the declaration include language "in substantially the following form: . . . I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct."  28 U.S.C. § 1746 (internal quotation marks omitted).  Plaintiffs' declarations begin with the phrase, "PLAINTIFF [Plaintiff's Name] hereby declares under penalty of perjury that the following is true."  *See, e.g.*, Decl. of Brent E. Pelton Ex. 10.  According to defendants, that language is deficient because it is in third person instead of first person, appears "in an unnumbered introductory paragraph that is less likely to have actually been read by the declarant," is not immediately followed by the declarant's signature, and affirms that the declarations are merely "true," not "true and correct."  Defs.' Mem. at 14-15.  Those deviations from the Section 1746 formula are not material.  "Although the [declarations] [do] not contain the exact language of Section 1746 nor state that the contents are 'true and correct,' [they] substantially compl[y] with these statutory requirements, which is all this Section requires."  *LeBoeuf, Lamb, Greene & MacRae, LLP. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999).

N.Y.C.R.R. § 146-1.3 (effective Jan. 1, 2011); *see Inclan*, 95 F. Supp. 3d at 497.  That departure from the minimum wage is called a tip credit.

To claim a tip credit under the FLSA, the employer must "take affirmative steps to inform affected employees of the employer's intent to claim the tip credit."  *Inclan*, 95 F. Supp. 3d at 497 (citation omitted).  "The employer bears the burden of showing that it satisfied the notice requirement by, for example, providing employees with a copy of [the statutory provision] and informing them that their tips will be used as a credit against the minimum wage as permitted by law."  *Gamero*, 272 F. Supp. 3d at 501 (internal quotation marks and citation omitted).  Under the FLSA, notice of the tip credit does not need to be in writing.  *Ibid.*

The NYLL, like federal law, lets an employer pay a tipped worker cash wages less than minimum wage if the wages paid to the employee together with the employee's tips are at least equal to minimum wage.  12 N.Y.C.R.R. § 146-1.3 (effective Jan. 1, 2011); *see Inclan*, 95 F. Supp. 3d at 497; *cf.* 29 U.S.C. §§ 203(m), 206(a)(1).  To take advantage of the tip-credit provision, before January 1, 2011, the NYLL required the employer to "furnish to [the] employee a statement with every payment of wages listing . . . allowances claimed as part of the minimum wage" and "maintain and preserve for not less than six years weekly payroll records . . . for [the] employee [showing] . . . allowances . . . claimed as part of the minimum wage."  *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015) (quoting 12 N.Y.C.R.R. §§ 137-2.2, 137-2.1(a) (repealed Jan. 1, 2011)).  To claim a tip credit under NYLL after January 1, 2011, state regulations require an employer to give employees notice.  *See* 12 N.Y.C.R.R. § 146-1.3.  A separate regulation defines what counts as valid notice.  *Id.* § 146-2.2.  Notice must be "written," indicate "the amount of tip credit, if any to be taken from the basic minimum hourly rate," be provided "[p]rior to the start of employment" and "prior to any change

20

in . . . hourly rates of pay," and be communicated in English and the employee's primary language.  *Id.* §§ 146-2.2(a), 146-2.2(a)(1)-(2), 146-2.2(b); *see Gamero*, 272 F. Supp. 3d at 501.  The employer bears the burden to prove compliance with the notice requirement.  12 N.Y.C.R.R. § 146-2.2(d); *see Gamero*, 272 F. Supp. 3d at 501.

Defendants argue that actual notice satisfies the NYLL.  *See* Defs.' Mem. at 18-19.  But the NYLL regulations plainly require written notice.  In particular, Section 146-1.3 permits a tip credit "if the employee has been notified of the tip credit as required in [S]ection 146-2.2," and Section 146-2.2 requires written notice.  12 N.Y.C.R.R. §§ 146-1.3, 146-2.2.  Accordingly, many courts have found that oral notice is insufficient.  *See Garcia v. Saigon Mkt. LLC*, No. 15-CV-9433 (VSB), 2019 WL 4640260, at *9 (S.D.N.Y. Sept. 24, 2019); *Sprague v. T.C. Inn*, No. 19-CV-1263 (LEK/MJ), 2021 WL 3617705, at *6-7 (N.D.N.Y. Aug. 16, 2021); *Chichinadze*, 517 F. Supp. 3d at 254; *Villanueva*, 500 F. Supp. 3d at 234; *but see Marin v. Apple-Metro, Inc.*, Nos. 12-CV-5274, 13-CV-1417 (ENV) (CLP), 2020 WL 6157011, at *12 (E.D.N.Y. Oct. 21, 2020) (reading Section 146-1.3 to require actual, not written notice).

Defendants cite one case, *Carvente-Avila v. Chaya Mushkah Restaurant Corp.*, No. 12-CV-5359 (KBF), 2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016), that found oral notice adequate for a tip credit.  In reaching that conclusion, the district court deferred to an opinion letter issued by the general counsel of the New York Department of Labor.  *See Carvente-Avila*, 2016 WL 3221141, at *2.  The opinion letter stated that "a food service employer is eligible to claim the tip credit even when [it] fail[s] to provide written notice . . . provided that the employer can demonstrate compliance with all the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit."  *Id.* at *1 (citation omitted).  The general counsel reasoned that Section 146-1.3 does not explicitly require written notice,

21

failure to provide written notice under Section 146.-2.2 results in a civil monetary penalty, not the loss of the tip credit, and requiring written notice would give a windfall to employees who had actual notice of the tip credit. *See Marin*, 2020 WL 6157011, at *10.

Since the opinion letter's interpretation of Section 146-1.3 conflicts with the regulation's text, I will not defer to the state agency. New York courts give "an agency's interpretation of its own regulation . . . deference," but "courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language." *Mid Island Therapy Assocs., LLC, v. N.Y. State Educ. Dep't*, 129 A.D.3d 1173, 1175 (N.Y. App. Div. 2015) (internal quotation marks and citations omitted). Here, the regulation's text is clear. To claim a tip credit, an employer must give the employee notice "as required in [S]ection 146-2.2." 12 N.Y.C.R.R. § 146-1.3. And Section 146-2.2 requires notice of a tip credit to be "written." *Id.* § 146-2.2. No amount of administrative deference can erase the writing requirement from Section 146-2.2 or insert the phrase, "except the writing requirement" into Section 146-1.3. Since the New York Department of Labor's interpretation conflicts with the text, it is "unreasonable and irrational," and does not receive deference. *Mogollan v. La Abundancia Bakery & Rest. Inc.*, No. 18-CV-3202 (GBD) (SDA), 2021 WL 1226923, at *6 (S.D.N.Y. Mar. 31, 2021).

Here, defendants have put forward evidence from which a jury could find in their favor on the tip credit question. Siklas asserted that at Parkview, the payroll company provided notice of the tip credit, although he did not provide records to support that claim. Decl. of Brent E. Pelton Ex. 3 at 110:12-25. And Siderakis testified that Cross Bay gave notice of the tip credit through hire sheets. *Id.* Ex. 1 at 52:25-53:3; 53:11-15, 99:18-21, 103:12-105:7. That claim, again, is not supported by documentary evidence. According to Siderakis, Hurricane Sandy destroyed the restaurant's records. *Id.* Ex. 1 at 53:4-10. And while Siderakis authenticated

certain records as hiring notices during his deposition, the tip-credit box is not checked on those notices.  *See id* Ex. 22 (Dkt. #89-22); *id.* Ex. 1 at 103:12-105:7.  Nevertheless, given the testimony of Siklas and Siderakis, which jurors could credit, a genuine dispute of material fact exists on whether defendants are entitled to take a tip credit.

#### 4.  Cross Bay

Summary judgment is denied on plaintiffs' minimum wage claims arising from their employment at Cross Bay because disputes remain about the hours they worked and the wages they received, their own estimates yield a pay rate greater than the minimum wage, or plaintiffs have failed to identify with specific particularity which plaintiffs are entitled to summary judgment.

Rosales testified that he worked as a cook at Cross Bay from June 2013 until the middle of June 2014.  Decl. of Brent E. Pelton Ex. 5 at 8:5-13, 10:19-23, 14:5-11.  Plaintiffs' Rule 56.1 Statement asserts that Rosales usually worked sixty hours per week.  Pls.' Statement ¶ 119.  Rosales testified that he always worked six days per week at Cross Bay.  *See* Decl. of Brent E. Pelton Ex. 5 at 12:5-10.  Rosales also testified that when Siderakis hired him, Siderakis told him that he would work a ten-hour shift from 8 p.m. to 6 a.m.  *Id.* Ex. 5 at 10:12-10:18.  But plaintiffs provide no record citations to testimony from Rosales that he did work shifts of that length.  *See* Pls.' Rule 56.1 Statement.  Regarding his wages, Rosales testified that he was paid a flat weekly rate of $600.  Decl. of Brent E. Pelton Ex. 5 at 23:11-21 (Dkt. #89-5).  Defendants dispute Rosales's account of his employment at Cross Bay.  Defendants claim that Rosales worked one week at Cross Bay. Defs.' Resp. at 35.  To support that assertion, defendants point to a timecard for a cook named "Dennis."  Decl. of Lawrence F. Morrison Ex. 17 (Dkt. #101-17).  The timecard shows eighteen hours worked at $10 per hour for a total of $180 in wages, with $5 deducted for two meals.  *Ibid.*  Since defendants have produced "evidence of the precise amount

23

of work performed" by Rosales and the wages paid to him, *Chichinadze*, 517 F. Supp. 3d at 252—and since $10 exceeded the NYLL minimum wage at all relevant times, *see* N.Y. Lab. L. § 652—a genuine dispute of material fact precludes summary judgment on Rosales's minimum wage claim.

Bonola worked as a cook and grill man at Cross Bay for around a year between 2014 and 2015. Pls.' Statement ¶ 128. The parties agree that he usually worked sixty hours per week and ten hours per day. *Id.* ¶ 129. According to Bonola, he was paid $720 per week. Decl. of Brent E. Pelton Ex. 6 at 11:11-12 (Dkt. #89-6). Bonola testified that he was charged a meal deduction, but he could not remember the amount that defendants charged him, and he stated that he always received $720. *Id.* Ex. 6 at 17:25-18:5, 27:2-6. Defendants dispute that any Cross Bay employees other than managers, the head chef, and the head baker received a weekly rate. *See* Decl. of Lawrence F. Morrison Ex. 3 at 53:20-54:3, 124:24-125:21, 127:21-128:9 (Dkt. #101-3); Defs.' Resp. at 19-20; Defs.' Mem. at 20. But assuming Bonola did receive a flat-rate salary of $720, worked 60 hours per week, and had no arrangement with defendants about his salary covering more than the first forty hours of work, his regular rate of pay was $18 per hour (720/40=12)—greater than the applicable New York minimum wage between December 31, 2013 and December 31, 2015. *See* N.Y. Lab. L. § 652; *Villanueva*, 500 F. Supp. 3d at 235; *see also Berrios*, 849 F. Supp. 2d at 385. Accordingly, summary judgment is denied with respect to Bonola's minimum-wage claims.

Jimenez worked as a cook at Cross Bay from early June 2013 to 2015. Pls.' Statement ¶ 137. Jimenez testified that he typically worked sixty hours per week and ten hours per day. Decl. of Brent E. Pelton Ex. 7 at 24:11-17; Pls.' Statement ¶ 138. According to Jimenez, Cross Bay paid him a flat-rate salary of $700 for the first two or three months of his employment and

then reduced his salary to $600 per week.  Decl. of Brent E. Pelton Ex. 7 at 26:13-27:19, 28:5-

10.  Defendants produced timecards that reflect a range of hours from forty-five to fifty-nine per

week.  Decl. of Lawrence F. Morrison Ex. 18 (Dkt. #101-18).  The timecards also show that

Jimenez received a base hourly wage of $11 and $16.50 for overtime.  *Ibid.*  Plaintiffs argue that

managers did not pay employees for all the hours that they clocked and point to handwritten

adjustments on timecards as evidence.  Pls.' Mem. at 11; *see* Decl. of Brent E. Pelton Ex. 18 (89-

18).  But Siderakis and two Cross Bay managers, Pablo Flores and Ernesto Quinto, asserted that

the edits reflected when employees started and stopped work in relation to a set schedule.  *See*

Decl. of Lawrence F. Morrison Ex. 3 at 110:2-111:17 (Dkt. #101-3); Decl. of Pablo Flores ¶¶ 2-7

(Dkt. #102); Decl. of Ernesto Quinto ¶¶ 2-7 (Dkt. #103).  The credibility of Siderakis, Flores,

and Quinto—including with respect to how employees spent their time, *see Singh v. City of New*

*York*, 524 F.3d 361, 368 (2d Cir. 2008)—is a question for the trier of fact, not the Court on

summary judgment, *see McClellan*, 439 F.3d at 144.  In any event, since defendants have

produced "evidence of the precise amount of work performed" by Rosales at Cross Bay and the

wages paid to him, *Chichinadze*, 517 F. Supp. 3d at 252—and since $11 exceeded the NYLL

minimum wage at all relevant times, *see* N.Y. Lab. L. § 652—a genuine dispute of material fact

precludes summary judgment on Rosales's minimum-wage claim.

Flores worked as a cook at Cross Bay from 2006 to the present except for eleven months

that he spent at Parkview after Hurricane Sandy.  Pls.' Statement ¶ 146.  Flores indicated during

his deposition that he worked between sixty and seventy hours per week at Cross Bay.  Decl. of

Brent E. Pelton Ex. 8 at 16:11-17:24.  According to Flores, Cross Bay paid him a flat-rate salary

of $730 per week when he started, $750 after a year on the job, and by 2012, $780.  *Id.* Ex. 8 at

10:19-22, 17:25-18:6, 24:7-13.  However, Flores testified that he was told that he received extra

pay for extra hours when he worked seven instead of six days in a week.  *Id.* Ex. 8 at 17:10-22. Defendants produced one check that showed Flores worked thirty-five hours at a rate of $9 per hour.  Decl. of Lawrence F. Morrison Ex. 20 at 142 (Dkt. #101-20).  Even assuming that Flores's estimated hours and rate of pay are accurate, he received between $18.25 and $19.50 per hour (730/40=18.25, 780/40=19.50), more than the applicable minimum wage.  *See* N.Y. Lab. L. § 652.   Since Flores has not established defendants' minimum-wage liability at Cross Bay, summary judgment is denied.

Mendez, Chocoj, Rodriguez, Jose Cardona, and Rigoberto Alvarez have not submitted admissible estimates of their hours and wages, and no other plaintiffs have submitted estimates. Plaintiffs argue that "[m]ost tipped employees and many non-tipped employees were paid minimum wage or less."  Pls.' Mem. at 12.  And plaintiffs argue that "[d]efendants' failure to pay minimum wage and overtime was a corporate policy that applied to all [c]lass [m]embers." *Id.* at 15.  To support those vague arguments, plaintiffs' memorandum cites exhibits that include unidentified documents and timecards labeled with first names, hiring sheets for Jose Cardona, Flores, Mendez, Chocoj, and one additional employee whose name is illegible, and one paystub made out to Flores.  Decl. of Brent E. Pelton Ex. 17 (Dkt. #89-17); *id.* Ex. 18; *id.* Ex. 19 (Dkt. #89-19); *id.* Ex. 22; *id.*  Ex. 23 (Dkt. #89-23).

Given the vague and conclusory nature of plaintiffs' argument, the difficulties of determining which plaintiffs correspond with which records and interpreting the records, and plaintiffs' apparent admission that some tipped plaintiffs received minimum wage, I decline to "do counsel's work" to identify which plaintiffs are entitled to summary judgment.  *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990); *see Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 287 n.39 (S.D.N.Y. 2017); *see also Abbott Labs. v. Adelphia Supply*

*USA*, No. 15-CV-5826 (CBA) (LB), 2018 WL 8967057, at *4 n.6 (E.D.N.Y. Aug. 7, 2018); *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015); *Herbert v. Architect of Capitol*, 839 F. Supp. 2d 284, 297-98 (D.D.C. 2012). In addition, since factual disputes remain about defendants' tip credits, whether plaintiffs received a flat-rate salary or hourly wage, and how defendants edited timecards, summary judgment is not warranted as to the class claims. Summary judgment is denied with respect to all minimum wage claims relating to employment at Cross Bay.

### 5. Parkview

Likewise, summary judgment is denied on plaintiffs' minimum-wage claims arising from their employment at Parkview because disputes remain about the hours they worked and the wages they received, or their own estimates yield a pay rate greater than the minimum wage.

Jimenez worked as a cook at Parkview for about two years between 2010 and late 2012 or early 2013. Pls.' Statement ¶ 137. At Parkview, Jimenez allegedly worked sixty hours per week and ten hours per day and usually received a flat-rate salary of $600 per week. Decl. of Brent E. Pelton Ex. 7 at 11:8-25. However, records that defendants produced for Jimenez at Parkview show that he received an hourly wage of $12 between October 1, 2010 and November 25, 2011, and an hourly wage of $8 between July 3, 2012 and November 29, 2012. *See id.* Ex. 20 (Dkt. #89-20). The records also indicate that Jimenez never worked more than 40 hours in a week at Parkview. *Ibid.* Accordingly, defendants have produced "evidence of the precise amount of work performed" by Jimenez and the wages paid to him. *Chichinadze*, 517 F. Supp. 3d at 252. And since $8 exceeded the federal and the NYLL minimum wages at all relevant times, *see* 29 U.S.C. § 206(a)(1); N.Y. Lab. L. § 652, a genuine dispute of material fact precludes summary judgment on Jimenez's minimum-wage claim.

Following Hurricane Sandy, Flores worked at Parkview for eleven months.  Pls.' Statement ¶ 146.  Flores indicated that he worked sixty hours per week at Parkview and received a flat-rate salary of $730 per week.  Decl. of Brent E. Pelton Ex. 8 at 9:25-10:24, 16:11-17:24; Pls.' Statement ¶ 147.  According to Flores, the defendants increased his salary by thirty or forty dollars after he complained.  Decl. of Brent E. Pelton Ex. 8 at 10:9-11:24.  Yet Siklas testified that after Hurricane Sandy he was overstaffed and so no employees worked more than forty hours in a week.  Decl. of Lawrence F. Morrison Ex. 4 at 45:3-16 (Dkt. #101-4).  Even assuming that Flores's account of his employment at Parkview is accurate, his regular rate of pay ranged from $18.25 to $19.25 or $19.50 (730/40=18.25, 770/40=19.25, 780/40=19.5) and therefore exceeded the applicable minimum wage.  *See* N.Y. Lab. L. § 652.

Mendez, Chocoj, Rodriguez, Jose Cardona, and Rigoberto Alvarez have not submitted admissible estimates of their hours and wages at Parkview, no other plaintiffs have submitted estimates, and the motion for summary judgment does not specify which of the tipped plaintiffs received less than minimum wage.  For reasons similar to those stated above, summary judgment is denied with respect to those plaintiffs' minimum wage claims relating to employment at Parkview and plaintiffs' class claims.

## B.   Overtime Claims

The FLSA "require[s] an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty per work week."  *Inclan*, 95 F. Supp. 3d at 498 (citing 29 U.S.C. § 207(a)(1)).  If an employer "failed to compensate [employees] properly for even one hour of overtime, liability is established[,] [and] [a]nything else relates only to damages."  *Estrella v. P.R. Painting Corp.*, 356 F. App'x 495, 497 (2d Cir. 2009) (summary order); *see Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 224 (D. Conn. 2013); *Garcia-Devargas v. Maino*, No. 15-CV-2285 (GBD) (JLC), 2017 WL 11567211, at *2

28

(S.D.N.Y. Mar. 29, 2017); *Draskovic v. Oneota Assocs., LLC*, No. 17-CV-5085 (ARR) (JO), 2019 WL 783033, at *12 (E.D.N.Y. Feb. 21, 2019).

The NYLL generally requires an employer to "pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" "for hours worked in excess of 40 hours in one workweek." 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4.

Plaintiffs have established that defendants failed to compensate Flores properly for at least one hour of overtime at Cross Bay. Flores submitted a paystub that shows that defendants paid him his regular rate of pay for fifty hours of work at Cross Bay. *See* Decl. of Brent E. Pelton Ex. 23. "Defendants do not dispute that this one pay statement demonstrates improper payment for ten hours at the regular rate instead of the overtime rate." Defs.' Mem. at 19. Therefore, summary judgment is granted to Flores on MCSS's and Siderakis's liability for his unpaid overtime wages at Cross Bay.

However, plaintiffs have not established that no factual disputes exist regarding overtime wages paid to the other plaintiffs. At Parkview, Flores testified that he worked sixty hours per week. Decl. of Brent E. Pelton Ex. 8 at 9:25-10:24, 16:11-17:24; Pls.' Statement ¶ 147. But Siklas stated that during Flores's period of employment, Parkview absorbed employees from Cross Bay and became overstaffed, which resulted in no Parkview employees working overtime. Decl. of Lawrence F. Morrison Ex. 4 at 45:3-16. And Jimenez's Parkview records for the period between October 1, 2010 and November 29, 2012 indicate that he did not work more than forty hours per week. Decl. of Brent E. Pelton Ex. 20. A reasonable jury could find that defendants countered Flores's and Jimenez's estimates with a preponderance of the evidence indicating that they did not work overtime. *See Chichinadze*, 517 F. Supp. 3d at 253. Summary judgment is denied with respect to Flores's and Jimenez's Parkview overtime claims.

29

At Cross Bay, Rosales, Bonola, and Jimenez claim that they worked sixty hours per week without receiving overtime wages.  As explained above, there is a genuine dispute about whether Rosales worked more than eighteen hours total at Cross Bay, and so summary judgment is denied with respect to his overtime claim.

Since a reasonable jury could conclude that defendants have met their burden to show that they paid overtime to Bonola and Jimenez, summary judgment on their overtime claims is denied.  Bonola's and Jimenez's claims both turn on their assertions that Cross Bay paid them a flat-rate salary without overtime compensation.  However, Siderakis suggested that only managerial employees, the head chef, and the head baker received a flat-rate salary, and defendants produced timecards for Jimenez that reflect proper overtime wages.  *See* Decl. of Lawrence F. Morrison Ex. 3 at 53:20-54:30, 124:24-125:21, 127:21-128:9; *id.* Ex. 18; Defs.' Resp. at 19-20; Defs.' Mem. at 20.   The accuracy of the overtime hours recorded on the timecards is a question for the trier of fact.  *See McClellan*, 439 F.3d at 144.

Mendez, Chocoj, Rodriguez, Jose Cardona, and Rigoberto Alvarez have not submitted admissible estimates of their hours and wages, and no other opt-in plaintiffs have submitted estimates.  For the reasons stated above, summary judgment is denied with respect to those plaintiffs' overtime wage claims relating to employment at Cross Bay and Parkview.

Plaintiff also move for summary judgment with respect to the four certified classes, but plaintiffs cite no authority that suggests summary judgment is appropriate for a class where liability has been established for one class member but not others.  *See* Pl.'s Mem. at 4-15.  As explained above, there are factual disputes about whether defendants paid overtime to all plaintiffs except Flores, and so summary judgment is inappropriate for the certified classes, too.

C.      **Spread-of-Hours Claims**

Under the NYLL, an employer must pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . for any day in which . . . the spread of hours exceeds 10 hours." 12 N.Y.C.R.R. § 142-2.4. New York law defines "[s]pread of hours" as "the interval between the beginning and end of an employee's workday." *Id.* § 142-3.16.

As discussed above, factual disputes remain about how many hours Jimenez and Flores worked per week at Parkview. In light of those disputes and Jimenez's testimony that he worked six days per week, a reasonable jury could find that Jimenez's workdays did not exceed ten hours. *See* Decl. of Brent E. Pelton Ex. 7 at 11:8-20. Similarly, a reasonable jury could find that Flores's workdays at Parkview did not exceed ten hours based on the dispute about his hours, his assertion that his hours per week did not change when he moved from Cross Bay to Parkview, and his assertion he consistently worked ten hours per day, six days per week at Cross Bay. *See id.* Ex. 8 at 9:25-10:24, 16:11-17:24; Pls.' Statement ¶ 147. Summary judgment is denied on Jimenez's and Flores's spread-of-hours claims regarding their work at Parkview.

Jimenez, Flores, and Bonola are not entitled to summary judgment on their spread-of-hours claims at Cross Bay. Siderakis testified that defendants paid spread-of-hours compensation at Cross Bay and identified where spread-of-hours compensation appeared on various records. Decl. of Lawrence F. Morrison Ex. 3 at 45:14-20, 100:24-101:5, 111:18-22, 121:14-15, 127:5-6. At least one timecard produced by plaintiffs appears to include spread-of-hours compensation. Decl. of Brent E. Pelton Ex. 18 at 25. Plaintiffs argue that the timecards do not accurately represent their hours, and that even if they do, the timecards show that plaintiffs did not receive spread-of-hours compensation. Pls.' Mem. at 16. But the accuracy of the timecards and the manager's edits is a question for the trier of fact, *see McClellan*, 439 F.3d at 144, and plaintiffs' argument amounts to a conclusory statement of defendants' liability

31

supported by a mass of unidentified and unexplained timecards.  *See* Decl. of Brent E. Pelton Ex. 18 at 13-23; Pls.' Mem. at 16.  On that basis, a reasonable factfinder could conclude that defendants paid spread-of-hours compensation to Jimenez, Flores, and Rosales.

Rosales is not entitled to summary judgment on his spread-of-hours claim, either.  As explained above, there is a genuine dispute about how many hours Rosales worked at Cross Bay. Moreover, the timecard that defendants produced for Rosales shows that while he clocked in and out of work in a spread that may have exceeded ten hours, the manager appears to have adjusted Rosales's hours to fall within a ten-hour spread.  *See* Decl. of Lawrence F. Morrison Ex. 17. Given the dispute about how managers edited timecards, whether Cross Bay had a practice of paying spread-of-hours compensation, as well as the uncertainty about Rosales's employment at Cross Bay, a reasonable jury could find that he is not entitled to spread-of-hours compensation. Therefore, summary judgment is denied on Rosales's spread-of-hours claim.

Finally, Mendez, Chocoj, Rodriguez, Jose Cardona, and Rigoberto Alvarez have not submitted admissible estimates of their hours and wages, and no other plaintiffs have submitted estimates.  As explained above, plaintiffs have not carried their burden to show that summary judgment is appropriate on a class-wide basis because their argument is vague and not supported by sufficient record evidence.  Summary judgment is therefore denied with respect to those plaintiffs' spread-of-hours claims relating to employment at Cross Bay and Parkview and plaintiffs' class claims.

## III.      Wage Notice and Statement Claims

Section 195(1) of the NYLL obligates an employer to give a wage notice to an employee at the time of hiring.  *See* N.Y. Lab. L. § 195(1).  That notice must include, among other things, "the rate or rates of pay and basis thereof," information as to whether pay will be "by the hour, shift, day, week, salary, piece, commission, or other," "allowances," "wage supplements," "the

name of the employer," and "the telephone number of the employer." *Ibid.*  The notice must also "state the regular hourly rate and overtime rate of pay" for "employees who are not exempt from overtime compensation." *Ibid.*  Further, the employer must "obtain from the employee a signed and dated written acknowledgment, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years." *Ibid.*

"From April 9, 2011 until February 26, 2015, the statute also required employers to provide annual notices." *Ying Ying Dai*, 490 F. Supp. 3d at 659.  While there is a "private right of action for employees to recover damages for an employer's failure to provide proper notices" at the time of hiring to employees hired on or after April 9, 2011, there is no right of action for employees hired before that date. *Ibid.*  Further, "employees may not bring a claim based on the annual wage notices" because the law "provides no right to damages" for the failure to provide them. *Ibid.*

Section 195(3) of the New York Labor Law obligates an employer to "furnish each employee with a statement with every payment of wages" that lists information such as "the dates of work covered by that payment of wages"; the "name of [the] employee"; the "name of [the] employer"; the "rate or rates of pay and basis thereof"; whether pay was "by the hour, shift, day, week, salary piece, commission, or other"; "gross wages"; "deductions"; and "allowances." N.Y. Lab. L. § 195(3).  That statement must also "include the overtime rate or rates of pay" for "employees who are not exempt from overtime compensation," among other information. *Ibid.*

Under the NYLL, an employer's "complete and timely payment of all wages . . . to the employee who was not provided notice" or "who was not provided statements" serves as an affirmative defense to a wage notice or wage statement claim. N.Y. Lab. L. §§ 198(1-b); 198(1-d).  Flores is the only plaintiff who has established liability on any wage claim—Cross Bay's

failure to pay overtime.   Accordingly, defendants may still assert their affirmative defense with respect to Flores's claims against Parkview, as well as all other plaintiffs' claims, and summary judgment is inappropriate with respect to those claims.

Flores is not entitled to summary judgment on his Cross Bay wage-notice claim.   Cross Bay hired Flores in 2006, and so he has no right of action to bring a wage notice claim for his initial period of Cross Bay employment.   *See Ying Ying Dai*, 490 F. Supp. 3d at 659.   The record includes Flores's hiring notice from November 18, 2013, which lists all the information required by Section 195(1).   *See* N.Y. Lab. L. § 195(1); Decl. of Brent E. Pelton Ex. 22 at 2.   Because Flores both checked the box indicating that English is his primary language and filled in a separate blank indicating that Spanish is his primary language, a reasonable jury could conclude that the English-language notice was sufficient.   Therefore, summary judgment on Flores's wage-notice claim against Cross Bay is denied.

Summary judgment is granted to Flores on his wage-statement claims against MCSS and Siderakis because Cross Bay provided him with deficient wage statements.   Flores's paystub indicates his base pay rate but does not include his overtime rate as required by the NYLL.   *See* N.Y. Lab. L. § 195(3); Decl. of Brent E. Pelton Ex. 23.   Although Siderakis testified that Cross Bay employees received their timecards when they were paid in cash, none of the timecards in the record clearly state the name of the employer as required by the NYLL.   *See* N.Y. Lab. L. § 195(3); Decl. of Lawrence F. Morrison Ex. 3 at 63:2-64:10; *see, e.g.*, *id.* Ex. 12 (Dkt. #101-12). Therefore, Flores has established the liability of MCSS and Siderakis for providing inadequate wage statements and is entitled to summary judgment on that claim.

## IV.      Uniform Claims

Under the NYLL, "an employer must reimburse employees for the purchase and maintenance of required uniforms."   *Allende v. PS Brother Gourmet, Inc.*, No. 11-CV-5427

(AJN) (KNF), 2013 WL 11327098, at *4 (S.D.N.Y. Feb. 1, 2013) (citing 12 N.Y.C.R.R. §§ 137-1.8 (repealed Jan. 1, 2011), 146-1.7, 146-1.8).   The NYLL defines a uniform as "clothing required to be worn while working at the request of an employer, . . . except clothing that may be worn as part of an employee's ordinary wardrobe."  12 N.Y.C.R.R. § 146-3.10(a); *see id.* § 137-3.13 (repealed Jan. 1, 2011) (A required uniform "does not . . . include clothing that may be worn as part of an employee's ordinary wardrobe.").  Since January 1, 2011, the NYLL has specified that an employee's "ordinary wardrobe" consists of "ordinary basic street clothing selected by the employee where the employer permits variations in details of dress."  *Id.* § 146-3.10(b).

Before January 1, 2011, an employer was not permitted to take allowances for the "supply, maintenance, or laundering" of uniforms as part of the minimum wage.  *See Flores v. Anjost Corp.*, 284 F.R.D. 112, 119 (S.D.N.Y. 2012); 12 N.Y.C.R.R. § 137-1.8 (repealed Jan. 1, 2011).  Since January 1, 2011, employers have been required to pay an employee's uniform expenses regardless of how much the employee is paid.  *Flores*, 284 F.R.D. at 119; 12 N.Y.C.R.R. §§ 146-1.7, 146-1.8.  However, employers need not pay maintenance costs for uniforms that "(1) are made of 'wash and wear' materials; (2) may be routinely washed and dried with other personal garments; (3) do not require ironing, dry cleaning, daily washing, commercial laundering, or other special treatment; and (4) are furnished to the employee in sufficient number, or the employee is reimbursed by the employer for the purchase of a sufficient number of uniforms, consistent with the average number of days per week worked by the employee."  12 N.Y.C.R.R. § 146-1.7(b).

Plaintiffs move for summary judgment on their claim that defendants failed to reimburse them for the purchase and maintenance of uniforms at Cross Bay and Parkview.  *See* Compl. ¶¶ 114-15; Pls.' Mem. at 19-20.  Defendants respond that the clothing employees had to wear at the

restaurants did not qualify as uniforms, and that even if defendants did require uniforms, defendants are entitled to the "wash and wear" exemption.  Defs.' Mem. at 23-24.  Factual disputes here preclude summary judgment.

First, the parties disagree about what clothes Cross Bay and Parkview required.  Siderakis testified that Cross Bay required "[a] shirt and black pants and non-slip shoes," as well as a tie from 2010 to 2012.  Decl. of Brent E. Pelton Ex. 1 at 66:16-23.   Rosales testified that Cross Bay required a t-shirt and checked pants.  *See id.* Ex. 5 at 37:2-12.  Flores testified that Cross Bay required a t-shirt, pants, and an apron.  *See id.* Ex. 8 at 20:19-23.  Regarding Parkview, Jimenez testified that the restaurant provided t-shirts that were black, red, or blue and read "Parkview Diner," checked pants, and white aprons printed with "Parkview Diner" text.  *Id.* Ex. 7 at 13:21-14:10.  Given plaintiffs' and defendants' inconsistent testimony about the required clothing, factual disputes exist about whether defendants permitted variations in dress and required only ordinary basic street clothing.  *See* 12 N.Y.C.R.R. § 146-3.10(b).

Plaintiffs argue that defendants are at least liable for the costs of aprons and clothing bearing restaurant names and logos.  But Jimenez and Flores testified that defendants provided the aprons and other clothing for free.  *See* Decl. of Brent E. Pelton Ex. 7 at 13:18-19; *id.* Ex. 8 at 20:18-21:11.  Moreover, with respect to other logo clothing, "[t]he question of whether plaintiffs' work clothing constituted a required uniform under New York law is better decided by a trier of fact . . . than as a matter of law."  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 293 (S.D.N.Y. 2011); *see Ramirez v. CSJ & Co.*, No. 06-CV-13677 (LAK), 2007 WL 700831, at *2 (S.D.N.Y. Mar. 6, 2007); *Nicholson v. Twelfth Street Corp.*, No. 09-CV-1984 (HB), 2010 WL 1780957, at *3 (S.D.N.Y. May 4, 2010); *see also Allende*, 2013 WL 11327098, at *4; *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998); *Salinas*, 123 F. Supp.

3d at 476 (S.D.N.Y. 2015).   Therefore, summary judgment on plaintiffs' uniform-purchase theory of liability is denied.

Assuming that the required clothes were uniforms, factual disputes exists about whether defendants are entitled to the "wash and wear" exemption.   "[A]s the record currently stands, it is unclear whether the uniforms were made of 'wash and wear' materials, whether the uniforms could be routinely washed and dried with other personal garments, or whether the uniforms required special treatment such as ironing, dry cleaning, daily washing, or commercial laundering."   *Cucu v. 861 Rest. Inc.*, No. 14-CV-1235 (JGK), 2017 WL 2389694, at *4 (S.D.N.Y. June 1, 2017) (citing 12 N.Y.C.R.R. § 146-1.7(b)).   And several plaintiffs testified that defendants provided sufficient uniforms consistent with employees' work obligations.   *See ibid.*; Decl. of Brent E. Pelton Ex. 5 at 37:24-38:5; *id.* Ex. 7 at 13:14-17.   Summary judgment on plaintiffs' uniform-maintenance theory is also denied.

## CONCLUSION

Flores is entitled to summary judgment on his overtime and wage statement claims against MCSS and Siderakis.   I deny plaintiffs' motion for summary judgment on all other claims.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 30, 2020
Brooklyn, New York