**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---

CATALINO MENDEZ, EDUARDO CHOCOJ
and ISRAEL RODRIGUEZ, Individually and
on Behalf of All Others Similarly Situated,

          **Plaintiffs,**

-against-                                                    16 Civ. 2746 (RLM)

MCSS REST. CORP., AL-KEN CORP. d/b/a
CROSS BAY DINER, MIKO ENTERPRISES,
LLC d/b/a PARKVIEW DINER, MICHAEL
SIDERAKIS, CHRISTOS SIDERAKIS and
KONSTANTINOS SIKLAS, Jointly and
Severally,

          **Defendants.**

---

**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS**
**SETTLEMENT AND APPROVAL OF CLASS COUNSEL'S FEES AND COSTS**

The above-captioned matter came before the Court on Plaintiffs' Motion for Final

Approval of Class Settlement and Approval of Class Counsel's Fees and Costs ("Motion for Final

Approval") (Dkt Nos. 128-130).

**I.       Background and Procedural History**

1.       The parties' proposed settlement resolves all claims in the action entitled *Catalino*

*Mendez, et al. v. MCSS Rest. Corp., et al*, 16 Civ. 2746 (E.D.N.Y.) (RLM) (the "Litigation"),

which is currently pending before this Court.

2.       The Plaintiffs allege that Defendants owned and operated Cross Bay Diner in

Queens, New York and Parkview Diner in Brooklyn, New York and failed to pay employees the

correct statutory minimum wage and overtime premiums for hours worked over forty (40) in a workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs further allege that Defendants failed to pay spread-of-hours premiums for days in which employees worked a shift or split-shift in excess of ten (10) hours in a day, failed to correctly compensate them for uniform expenses, and failed to provide wage statements and wage notices, in violation of the NYLL.

3.      Catalino Mendez, Eduardo Chocoj, and Israel Rodriguez (collectively, the "Named Plaintiffs") commenced the Action on May 31, 2016 as a putative class action under Fed. R. Civ. P. 23 and as a collective action under the FLSA by filing the Collective and Class Action Complaint (the "Complaint").   Defendants Al-Ken Corp. ("Al-Ken"), MCSS Restaurant Corp. ("MCSS"), Michael Siderakis ("M. Siderakis"), and Konstantinos Siklas ("Siklas") (collectively, the "Defendants") filed an Answer to the Complaint on September 1, 2016, disputing the material allegations. (Dkt. No. 14).  The Clerk of Court entered a notation of default as to Christos Siderakis ("C. Siderakis") on September 8, 2016 (Dkt. No. 17), and Plaintiffs later learned that C. Siderakis passed away in or around April 2018. While Miko Enterprises, LLC ("Miko") has not filed an Answer or other pleading responsive to the Complaint, Miko has participated in this Action, including motion briefing, and is a party to the settlement described herein. Plaintiffs have dismissed C. Siderakis without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Dkt. No. 127).

## II.    Overview of Investigation and Discovery

4.      During the pendency of this litigation, the parties have engaged in extensive discovery, including written discovery and depositions, significant motion briefing including Fed. R. Civ. P. 23 class certification and summary judgment, and three (3) separate settlement and

2

mediation proceedings. (Declaration of Brent Pelton in support of Motion for Final Approval (Pelton Decl.) (Dkt. No. 130) ¶¶ 22-24).

### III.    Settlement Negotiations

5.      The parties have engaged in extensive informal and formal settlement length, which were at all times conducted at arm's length. The parties attended a settlement conference before the Court as well as two (2) private mediation sessions, the final of which resulted in a preliminary resolution. Class Counsel prepared several damages analyses using information gathered from the Named and Opt-in Plaintiffs and time and payroll records produced by Defendants. (Pelton Decl. ¶ 24).

6.      At a January 14, 2022 mediation before Ruth Raisfeld, Esq., the parties reached a settlement in principle and subsequently negotiated the remaining terms of the settlement (Dkt. No. 116; *see also* Pelton Decl. ¶¶ 24-25) which have been memorialized in a formal Settlement Agreement and Release (the "Settlement Agreement"), attached to the Pelton Decl. as Exhibit A.[1] (Dkt. No. 130)

7.      At all times during the settlement negotiation process, negotiations were conducted at an arm's-length basis, including the initial settlement conference held before this Court. (Dkt. No. 43; Pelton Decl. ¶ 24).

8.      The Parties agreed to settle this case for a total Settlement Amount of $505,000.00 (the "Settlement Amount"). (Ex. A (Settlement Agreement) ¶ 3.1(A)). After deduction of attorneys' fees and costs, service awards for the Named Plaintiffs and settlement administration costs, the remaining funds will be allocated among Participating Class Members (the "Net Settlement Fund"). (*Id,* ¶¶ 1.26, 3.4(A)(2)).   All persons who worked for Defendants in such

---

[1] All exhibits referenced herein are attached to the Pelton Decl. unless otherwise stated.

positions and such time periods as to fit within the definition of one (1) or more of the certified Rule 23 Classes ("Class Members") are eligible to participate in the Settlement. (*Id.* ¶¶ 1.7, 1.39).

9.      Class Members who return a Claim Form will receive a portion of the Net Settlement Fund, which will be allocated based on each Class Members' dates of employment and damages, as calculated according to Defendant's time and payroll records. (*Id.* ¶ 3.4(A)(4)-(6)).

10.      The amounts paid to Class Members will be allocated fifty percent (50%) as W-2 wage payments and (50%) as non-wage liquidated damages and interest, such that all W-2 payments shall be subject to payroll and withholdings taxes.  (*Id.* ¶ 3.5(A))

11.      The Settlement Fund will be funded by Defendants in accordance with the two (2) payment distributions. (Ex. A ¶¶ 1.34, 3.1(C)-(E)). The First Payment Distribution shall be funded by Defendant Siklas in the amount of $5,000.00 and in the amount of $200,000.00 by the remaining Defendants by check or wire transfer by thirty (30) days after entry of this Final Approval Order. The Second Payment Distribution shall be funded by Defendants, other than Defendant Siklas, in the form of eighteen (18) postdated checks, each in the amount of $16,666.66, to be deposited by the Settlement Administrator on a monthly basis beginning no later than thirty (30) days after payment of the First Payment Distribution and concluding no later than eighteen (18) months form the date of the First Payment Distribution.

12.      Payments shall be made to Class Members in two (2) distribution rounds. (Ex. A ¶¶ 1.34, 3.6). Settlement Checks shall be mailed within ten (10) days after each respective distribution is fully funded. (*Id.*)

13.      Participating Class Members will have an Acceptance Period of 120 days from the date of mailing in which to cash their Settlement Checks and six (6) months after the mailing of the Settlement Checks to request replacement checks. (Ex. A ¶¶ 3.1(H), (I)). (J)   In   the   event

4

that any Class Member fails to cash their Settlement Check or Replacement Settlement Check within the Acceptance Period of the Second Payment Distribution, the Settlement Administrator shall, if economically feasible, redistribute the funds from those uncashed check(s) among the Participating Class Members who had previously cashed Settlement Checks, in pro-rata payments based on the allocation. (*Id.* ¶ 3.1(J)).  If re-distribution is not economically feasible, the Settlement Administrator shall donate the uncashed amount to NOVA Hope for Haiti. (*Id.*) No portion of the Settlement Amount shall return to Defendants as a reversion. (*Id.*)

## IV.     Preliminary Approval of Settlement and Dissemination of the Notice

14.     On April 4, 2022, the Court held a telephonic motion hearing regarding the parties' Motion for Preliminary Approval for a Class Settlement (Dkt. Nos. 118-120, the "Preliminary Approval Motion"), requesting supplementary materials primarily regarding the claim form distribution element of the Settlement Agreement. (Dkt. No. 122). After Plaintiffs' submission of these materials (Dkt. No. 124), the Court preliminarily approved the Parties' proposed settlement, approving the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Notice") and authorizing the mailing of the Notice to the Class Members. (Dkt. No. 126 (the "Preliminary Approval Order").

15.     Pursuant to the Preliminary Approval Order, Class Counsel provided the Settlement Administrator with a list of Class Members' names and, to the extent available, last known addresses, compiled from Defendants' information exchanged pursuant to the parties § 216(b) collective action notice stipulation and Class Counsel's subsequent communications with Opt-in Plaintiffs. (Pelton Decl. ¶ 5). In total, 179 individuals were identified as eligible for participation in the settlement, consisting of three (3) Named Plaintiffs, fifteen (15) Opt-in Plaintiffs, and 161

Class Members. (*Id.* ¶ 6). Notice was mailed to 171 Class Members and Opt-in Plaintiffs. (*Id.* ¶ 7).

16.    On April 22, 2022 the Settlement Administrator mailed the Notice packages, including Claim Forms, to 173 Class Members. (*See* Pelton Decl., Ex. B (Declaration of Snehal Indra) ¶¶ 3-4).

17.    One (1) additional Notice package was subsequently mailed following a Class Member's communication with Class Counsel. (Pelton Decl. ¶ 7; Indra Decl. ¶ 4).

18.    If a Class Member's Notice was returned by the USPS as undeliverable without a forwarding address, the Settlement Administrator performed an advanced address search ("skip trace") on the address using a nationally recognized location service. (Pelton Decl. ¶ 8; Indra Decl. ¶ 5).  Of these undeliverable notices, updated addresses were obtained and Notice was re-mailed to two (2) Class Members. (Indra Decl. ¶ 5). In addition, Class Counsel provided ALCS with twelve (12) updated Class Member addresses, to which Class Notice was re-sent. (Pelton Decl. ¶ 8).  As of July 21, 2022, twenty-one (21) Notices were undeliverable because the Settlement Administrator was unable to locate a current address. (Indra Decl. ¶ 6).

19.    The Notices advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, how Class Members could participate in the Settlement, and how Class Members could obtain additional information regarding the case and settlement. The Notice package also included a Claim Form Class Members were required to return in order to participate in the Settlement. (Pelton Decl. ¶ 9; Indra Decl. ¶ 7; Dkt. No. 120, Exs. C, D (Proposed Notice, Proposed Claim Form)).

20.    The Settlement Agreement provided Class Members with ninety (90) days to return claim forms. (Sttmt Agmt. ¶ 1.5). During this period, the Settlement Administrator received forty-

four (44) valid and timely claim forms and zero (0) untimely or otherwise deficient claim forms. The Settlement Agreement did not require Named and Opt-in Plaintiffs to submit claim forms in order to receive a payment. (*Id.* ¶¶ 1.4, 1.33. 2.13). Thus, the three (3) Named Plaintiffs and four (4) Opt-in Plaintiffs who did not return claim forms are entitled to receive a payment from the settlement. (Pelton Decl. ¶ 14; Dkt. No. 131 (Claim Form Letter), Ex. A (Supp. Indra Decl.) ¶ 3). In total, fifty-one (51) Class Members, including the Opt-in Plaintiffs and Named Plaintiffs, are entitled to receive a payment from the settlement. (Claim Form Letter; Supp. Indra Decl. ¶ 3).

## V.      Contributions of the Named Plaintiffs

21.      The Named *Plaintiffs* were integral in initiating this class action and made significant contributions to the prosecution of the litigation. (*See* Pelton Decl. ¶ 16). The Named Plaintiffs as Class Representatives have no conflicts with the Class Members, no interests antagonistic to those of the Class, and have actively participated in the Action on behalf of their own claims and the claims of Class Members. (*Id.*) The Named Plaintiffs served the class by providing detailed factual information regarding their job duties and hours worked, and the job duties and hours worked of the class members, assisting with the preparation of the complaint, producing documents in support of their claims, relaying information to Class Members during the pendency of this case, participating in settlement negotiations, attending three (3) mediation sessions, and assuming the burden associated with assisting with litigation. (*Id.* ¶¶ 17-18).

22.      The Named Plaintiffs also assumed the risks of litigation as well as other professional risks and burdens, including the potential for retaliation and damage to their reputation in the restaurant industry. (Pelton Decl. ¶ 19).

23.      Without the effort of the Named Plaintiffs, this case on behalf of the Class would not have been brought, and this settlement would not have been achieved. (Pelton Decl. ¶ 20).

24.     Service Awards of this type are commonly awarded in complex wage and hour litigation.

**VI.     Final Approval of Class Settlement**

25.     The Court held a fairness hearing on August 4, 2022. Dkt. No. 132)

26.     At the Fairness Hearing, the Court found fair and reasonable the method of notice and the proposed allocation of the total settlement amount, including attorneys' fees and service awards. (Dkt. No. 132).

27.     The Court raised concerns about the administration costs incurred and the retention of jurisdiction for the period of the settlement distribution. Accordingly, the Court requested supplemental briefing on the administrative costs. The Court also noted that Plaintiffs requested deferment of ruling on the Motion for Final Approval pending their receipt of executed Confessions of Judgment from all Defendants.

28.     Having considered the Motion for Final Approval, the supporting declarations, the arguments presented at the fairness hearing, the supplemental submissions of Plaintiffs and the Settlement Administrator and the complete record in this matter, for good cause shown, the Court (i) grants final approval of the settlement memorialized in the Settlement Agreement, attached to the Pelton Decl. (Dkt. No. 130) as Exhibit A; (ii) approves the service payments in the amounts of five thousand dollars ($5,000) for each of the three (3) Named Plaintiffs, for a total of fifteen thousand dollars ($15,000); (iii) approves the Settlement Administration fees in the amount of $25,116.96 for work performed and future anticipated work over the duration of the settlement payment distributions (Dkt. No. 134, Ex. A (ALCS Letter)); and (iv) approves an award of attorneys' fees in the amount of $163,595.33 (one-third (1/3) of the Settlement Amount after subtracting litigation costs) and reimbursement of litigation expenses in the amount of $14,214.01.

29.     Rule 23(e)(1) approves the two-part settlement approval practice that has become standard in this Circuit, providing that the district court direct notice to class members after determining that the court will likely be able to grant final approval of the settlement and certification of the settlement class, if not already certified.  *See* F.R.C.P. 23(e)(1); Notes of Advisory Committee on 2018 Amendments.

30.     Rule 23(e) requires that Courts consider the fairness, reasonableness and adequacy of the settlement and the benefits of the settlement to class members. F.R.C.P. 23(3); *see also Elliot v. Leatherstocking Corp.*, No. 10-cv-934, 2012 U.S. Dist. LEXIS 171443, at *7 (N.D.N.Y. Dec. 4, 2012).  In evaluating the fairness of a settlement, a court should examine "the terms of the stipulation and the negotiating process that led to such agreement." *Christine Asia Co. v. Jack Yun Ma*, No. 15-md-2631, 2019 U.S. Dist. LEXIS 179836, at *35 (S.D.N.Y. Oct. 16, 2019). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). Courts typically presume that a settlement "meets the requirements of due process" where the agreement was reached after "arm's length negotiation between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009); *Massiah v. Metroplus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 U.S. Dist. LEXIS 166383, at *14 (E.D.N.Y. Nov. 20, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement").

31.     If the settlement was achieved through experienced counsels' arm's-length negotiations, ""absent fraud or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Lora v. To-Rise LLC*, No. 16-cv-3604, 2020

U.S. Dist. LEXIS 252212, at *21-22 (E.D.N.Y. June 3, 2020).  In evaluating the fairness of a settlement, "the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Massiah,* 2012 U.S. Dist. LEXIS 166383, at *6.  In doing so, "the Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Id.*

### A.    Procedural Fairness

32.    It is clear from the history of the case that the parties reached this settlement only after engaging in extensive investigation, discovery, litigation including briefing class certification and dispositive motions, all of which allowed each side to assess the potential risks of continued litigation, and several rounds of robust settlement discussions, including three (3) lengthy mediation sessions. The settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery.

### B.    Substantive Fairness

33.    To determine the fairness, reasonableness, adequacy, and benefits to class members contained in a settlement, courts should examine a list of core concerns set forth by Rule 23(3)(2) specifically whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

34.    Prior to the 2018 amendments to Rule 23, courts in the Second Circuit generally considered, and frequently continue to consider, the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The *Grinnell* factors are (1) the complexity,

expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

35.     Many of these factors evaluate similar factors as the Rule 23(e) analysis and are still relevant to evaluating the fairness of proposed class settlements. *See* Advisory Committee Notes (Rule 23(e)(2) factors not designed to displace any factor); *Christine Asia Co.* 2019 U.S. Dist. LEXIS 179836, at *37 ("The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors"). All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, ~~and certainly in favor of preliminary approval.~~

36.     "FLSA collective actions do not implicate the same due process concerns as Rule 23 actions… the standard for approval of an FLSA settlement is lower than for a class action under Rule 23." *Thompson v. Am. Limousine Grp, LLC*, No. 19-cv-4133, 2022 U.S. Dist. LEXIS 88045, at *10-11 (S.D.N.Y. May 13, 2022). Accordingly, satisfaction of the Rule 23(e)(2) and *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the Rule 23(e)(2) and *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

37.     The Named Plaintiffs and Class Counsel have adequately represented the Class over the six (6) years that this litigation has been pending. The Named Plaintiffs as Class Representatives have no conflicts with the Class Members, no interests antagonistic to those of the

11

Class, and have actively participated in the Action on behalf of their own claims and the claims of Class Members. Class Counsel have extensive experience in litigating and settling wage and hour class actions and have already expended substantial time, work and resources into prosecuting this matter. As a result, Class Counsel has reached a fair settlement on behalf of Class Members.

38.     The settlement was negotiated at arm's length at all times during the six (6) year pendency of this litigation and all informal and formal settlement negotiations, including a settlement conference before this Court and two (2) private mediation sessions. As such, the settlement negotiation procedure has been fair to Plaintiffs and Class Members.

39.     Class Members' recovery is fair and adequate. The allocation formula reflects the strengths of each individual's claim, as it takes into account the relative strengths and weaknesses of Class Members' claims depending upon their hours worked, positions held, total weeks worked, and the dates when they worked. (Ex. A ¶ 3.4(A)(4)-(12)). Particularly given the lengthy duration of this Action and the terms of the settlement providing for a substantial initial payment within a relatively short timeline after Final Approval, this Settlement Agreement provides a significant benefit for Class Members in securing a substantial payment with little further delay.

40.     The releases provided by the Settlement Agreement are reasonable. The Settlement Agreement provides that all Class Members who do not timely opt out will release all state law wage claims and that all Named and Opt-in Plaintiffs will release all federal wage claims under the FLSA. (Ex. A ¶¶ 2.9(B), 2.13(A)-(D), 3.4(A)(1); Pelton Decl. ¶¶ 39-40). The releases are limited to wage claims that arise or accrue through preliminary approval of the settlement. As such, they are "narrowly limited to claims arising from the specific facts giving rise to this action." *Grant*, 2019 U.S. Dist. LEXIS 14673, at *21 (finding that releases operate in an equitable manner).

The Settlement Agreement reflects Class Counsel's reasonable assessment of the weight of the risks that would be incurred by further litigating this matter. These risks include Defendants' likely difficulty in paying a higher judgment, the bankruptcy of the corporate Defendants, the sale of Parkview Diner, and Defendants' possession of significant time and pay records for the New Cross Bay classes. Further litigation would entail significant additional expense and delay, including potential de-certification motion practice and a complicated trial would be necessary, featuring extensive testimony by Defendants, the Named Plaintiffs, the Opt-in Plaintiffs and additional employees of Defendants.   As such, resolution of liability issues and damages calculations, potential de-certification, trial, and the potential appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates this uncertainty.

41.     The Settlement Agreement and the Claim Form mechanism is an effective means to guarantee that the Settlement Administrator will be able to send settlement checks to all Class Members who wish to participate in the Settlement. The claim form mechanism is commonly approved in the Second Circuit. *See*, *e.g.*, *Lora*, 2020 U.S. Dist. LEXIS 252212, at *8; *Schucker v. Flowers Foods*, No. 16-cv-3439, 2018 U.S. Dist. LEXIS 243935, at *20 (S.D.N.Y. Apr. 10, 2018); *Surdu v. Madison Global, LLC*, No. 15-cv-6567, 2017 U.S. Dist. LEXIS 142175, at *7-*8 (S.D.N.Y. Sept. 1, 2017); *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015). It is especially appropriate in this instance, where this Action was filed over six (6) years ago, such that it is crucial for the parties to ensure that settlement payments arrive at the correct addresses and actually reach Class Members who are interested in participating in this Settlement.

42.     The attorneys' fee terms, discussed further below, are fair and reasonable, within the norms of this Circuit, and were fairly communicated to Plaintiffs.

43.     The parties represent that they have made no other agreements or settlements, including agreements pertaining to attorneys' fees or other payments, to resolve the claims of Plaintiffs or the Class in this Action. (Pelton Decl. ¶ 25).

44.     Class Members have been clearly notified of the process and effects of objecting or opting-out from the Settlement. (Indra Decl. ¶ 7; Dkt. No. 120, Exs. C, D (Proposed Notice, Proposed Claim Form)). Zero (0) Class Members have objected or opted-out from the Settlement. (Pelton Decl. ¶ 13).

45.     As of July 21, 2022 the Settlement Administrator has received forty-four (44) timely-filed and valid Claim Forms; in addition, four (4) Opt-in Plaintiffs and the three (3) Named Plaintiffs who did not return Claim Forms are also eligible to receive payments.  (Pelton Decl. ¶ 14; Supp. Indra Decl. ¶ 3).  "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d at 344-45 (approving settlement where 13 out of 3,500 class members objected and 3 opted out). Since "the class's reaction to the settlement was very positive," this factor weighs strongly in favor of approval. *Manley v. Midan Rest., Inc.*, No. 14-cv-1693, 2017 U.S. Dist. LEXIS 44560, at *11 (S.D.N.Y. Mar. 27, 2017).

46.     As of the date of filing, 28% of all Plaintiffs and Class Members have returned Claim Forms or are otherwise entitled as Opt-in or Named Plaintiffs to recover payment from this settlement, and more may yet arrive. (Pelton Decl. ¶ 14). This participation rate may be slightly higher, given that some entries of the Class List may be duplicates. (*Id.*).

47.     This return rate demonstrates a strong positive reaction by the Class and is within the range accepted by courts in this Circuit in wage and hour class settlements. *See Lora*, 2020 U.S. Dist. LEXIS 252212, at *10 (approving settlement where 23% of collective and class

members who received notice and 22% of collective and class members who were sent the notice submitted claim forms); *Hall v. Prosource Techs., LLC*, No. 14-cv-2502, 2016 U.S. Dist. LEXIS 53791, at *11 (E.D.N.Y. Apr. 11, 2016) (approving settlement where 26% of Claim Forms were returned); *Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370 (W.D.N.Y. 2016) (approving settlement with 21% participation rate, noting the "high participation rate for a 'claims made' settlement," which "regularly yield response rates of 10 percent or less") (internal citations omitted); *Hernandez*, 306 F.R.D. at 100 (approving settlement with 20% participating rate and observing that "this participation rate is well above average in class action settlements")

48.     The parties have completed enough discovery to recommend settlement, as they have exchanged extensive written discovery and taken a total of seven (7) depositions. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). (internal quotations omitted). The parties' discovery here meets this standard. Discovery was extensive and included both document and deposition discovery as well as significant motion practice and substantial informal and formal settlement negotiations including three (3) separate settlement and mediation proceedings, the final of which succeeded in reaching a settlement in principle. (Pelton Decl. ¶¶ 22-24).

49.     The risk of establishing liability and damages further weighs in favor of final approval. A trial on the merits and further litigation would involve risks. Given the burden of

proving liability and damages under the FLSA and NYLL, and given that Plaintiffs' summary judgment motion for liability was denied in part, it is clear that "the claims and defenses are fact-intensive and present risks" to both parties at a trial on the merits. *Manley*, 2017 U.S. Dist. LEXIS 44560, at *13; *see also Massiah*, 2012 U.S. Dist. LEXIS 166383, at *11 ("Litigation inherently involves risks"). The settlement alleviates this uncertainty.

50.     The risk of maintaining the class status through trial is also present. Plaintiffs would likely face de-certification motion practice prior to trial.  Risk, expense, and delay are involved in each of these steps in the litigation.  Settlement eliminates this risk, expense, and delay. *Elliot*, 2012 U.S. Dist. LEXIS 171443, at *11 (discussing the burdens and risks of maintaining class status through trial).

51.     The COVID-19 pandemic has weighed heavily on the restaurant business, including Defendants'; Parkview Diner has been sold to non-parties; and two (2) of the Corporate Defendants have filed for bankruptcy during the pendency of this Action.  Even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). In this instance it is at best unclear whether Defendants could withstand a larger judgment, and therefore, "this factor is neutral and does not preclude final settlement approval." *Manley*, 2017 U.S. Dist. LEXIS 44560, at *14.

52.     The substantial amount of the settlement weighs strongly in favor of final approval. "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "'Instead, "there is a range of reasonableness with respect to

a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."' *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775, at *34 (S.D.N.Y. Sept. 16, 2011).   The eighth and ninth Grinnell factors favor final approval.

## VII.   Approval of the FLSA Settlement

53.     The Court hereby approves the FLSA settlement.

54.     The "standard for approval of an FLSA settlement is lower than for a class action under Rule 23" since FLSA collective actions "do not implicate the same due process concerns" in that parties will not be bound by the settlement unless they opt in. *Thompson*, 2022 U.S. Dist. LEXIS 88045, at *10-11.

55.     Courts approve FLSA settlements when "they are reached as a result of contested litigation to resolve *bona fide* disputes," which can be determined from the "adversarial nature of a litigated FLSA case" and whether "the proposed FLSA settlement reflects a reasonable compromise over contested issues." *Guaman v. Ajna-Bar NYC*, 2013 U.S. Dist. LEXIS 16206, at *15-16 (S.D.N.Y. Feb. 5, 2013).

56.     The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation, and that the settlement terms are fair and appropriate.

## VIII.   Dissemination of Notice

17

57.    Pursuant to the Preliminary Approval Order, Notice was sent by first-class mail to each Class Member and Opt-in Plaintiff for whom addresses were provided. (Pelton Decl. ¶¶ 6-7). The Court finds that the mailed Notice fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted August 4, 2022.  Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

## IX.    Award of Fees and Costs to Class Counsel and Service Awards to Named and Opt-in Plaintiffs

58.    Class Counsel did substantial work identifying, investigating, litigating and settling the Named and Opt-in Plaintiffs' and the Class Members' claims over the past six (6) years.

59.    Class Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage-and-hour law and in class action law.

60.    The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class' interests.

61.    The Court hereby awards Class Counsel $163,595.33 in attorneys' fees or one-third (1/3) of the Settlement Amount after subtracting Class Counsel's actual litigation costs.

62.    The Court finds that the amount of fees requested is fair and reasonable using the percentage-of-recovery method, which is consistent with the trend in this Circuit. *See Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *60 (citing *McDaniel v. Cty of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)).

63.     Class Counsel's fee request of one-third (33.33%) of the Settlement Fund is "reasonable and consistent with the norms of class litigation in this circuit," including wage and hour cases, and "should be awarded on the basis of the total funds made available." *Kochilas v. Nat'l Merch. Servs.,* No. 14-cv-311, 2015 U.S. Dist. LEXIS 135553, at *20-21 (E.D.N.Y. Oct. 2, 2015) (citations omitted); *see also Chen v. Xpressa at Terminal 4 JFK LLC,* No. 15.-cv-1347, 2021 U.S. Dist. LEXIS 189942, at *19-20 (E.D.N.Y. Oct. 1, 2021) (approving one-third fee award); *Manley,* 2017 U.S. Dist. LEXIS 44560, at *26 (approving one-third fee award); *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 15-cv-441, 2016 U.S. Dist. LEXIS 78043, at *26 (N.D.N.Y. June 17, 2016) (32% of gross settlement fund and citing cases)*, DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *13 (S.D.N.Y. May 7, 2015) (one-third); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 U.S. Dist. LEXIS 105596, at *26-*28 (S.D.N.Y. July 31, 2014) (33.33%).

64.     Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of one-third (1/3) of the settlement amount is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,* 493 F.3d 110, 111–12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a one-third (1/3) recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success.

19

65.     Even evaluating the attorneys' fees requested by Class Counsel under the "lodestar method," the request for $163,595.33 is also reasonable under the *Goldberger* factors. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

66.     The attorney and paralegal hourly billing rates ranging from $125 per hour for paralegals to $450 per hour for senior partners are at the high end of the range awarded in wage and hour cases in this district. *E.g.*, *Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp*, No. 18-cv-4036, Dkt. No. 156 (Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates); *Hall v. ProSource Techs., LLC, et al.*, No. 14 Civ. 2502, 2016 U.S. Dist. LEXIS 53791, at *37 (E.D.N.Y. Apr. 11, 2016) (approving counsel's rates).

67.     However, the attorneys' fee award represents less than Class Counsel's stated lodestar and is reasonable under the circumstances of this case. *See, e.g., Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014) (Concluding that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases."); *see also In re Platinum & Palladium Commodities Litig.*, No. 10 Civ. 3617, 2015 U.S. Dist. LEXIS 98691, at *11 (S.D.N.Y. July 7, 2015) ("Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved."). "The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request." *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102, at *19; *see also Zeltser v. Merrill Lynch & Co.,* No. 13-cv-1531, 2014 U.S. Dist. LEXIS

20

135635 at *23-24 (S.D.N.Y. Sept. 23, 2014).

68.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $14,214.01, which is to be paid from the settlement amount.

69.     The attorneys' fees awarded and expenses reimbursed, shall be paid from the settlement amount.

70.     The Court finds reasonable service awards to the three (3) Named Plaintiffs in the amount of $5,000 each for a total of $15,000. These amounts shall be paid from the settlement. "Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting in the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Massiah*, 2012 U.S. Dist. LEXIS 166383, at *22 (approving service awards of $10,000 and $5,000); *see also De La Cruz v. Manhattan Parking Grp, LLC*, No. 20-cv, 2022 U.S. Dist. LEXIS 123267, at *6 (approving $15,000 service awards for named plaintiffs); *Lora*, 2020 U.S. Dist. LEXIS 252212, at *22, fn. 3 (service awards of $10,000 and $15,000 "are reasonable in light of the burdens place on the Lead Plaintiffs during the 4 years of litigation and in consideration of the range of recovery for all Plaintiffs"); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 139144, at *22-*23 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs).

71.     Finally, the Court finds the Settlement Administrator fees of $25,116.96 reasonable. Without the Settlement Administrator, Class Members would not have received notice of the settlement, nor would they receive their share of the settlement proceeds. The Settlement Administrator's work included an initial mailing of the settlement notice and claim form along

with a business reply envelope to a total of 174 Class Members, taking reasonable steps to obtain the correct addresses of Class Members, and obtaining and recording claim forms and, if any, objections and opt-out statements. (*See* Indra Decl., *passim*; *see also* ALCS Letter). The Settlement Administrator has additional work to complete the administration given the two rounds of payment distribution. Courts regularly award administrative costs associated with providing notice to the class. *See*, *e.g., De La Cruz. v. Manhattan Parking Grp.*, No. 20-cv-977, 2022 U.S. Dist. LEXIS 123267 (S.D.N.Y. July 12, 2022); *Reyes v. Nocera Rest., Inc.*, No. 16-cv-0455, 2020 U.S. Dist. LEXIS 96799 (E.D.N.Y. May 31, 2020); *Rodriguez v. Park It Mgmt. Corp.*, No. 17-cv-4995, Dkt. No. 116 (S.D.N.Y. Feb. 14, 2019) (Order at Dkt. No. 134, Ex. C); *Xiao Ling Chen v. ExpresSpa at Terminal 4 Jfk LLC*, No. 15-cv-1347, 2021 U.S. Dist. LEXIS 189942 (E.D.N.Y. Oct. 1, 2021); *Faroque v. Park West Exec. Servs.*, No. 15-cv-6868, 2020 U.S. Dist. LEXIS 15839 (E.D.N.Y. Jan. 29, 2020); *Quow v. Accurate Mech. Inc.*, No. 15-cv-9852, 2018 U.S. Dist. LEXIS 114524 (S.D.N.Y. July 10, 2018); *Aboud v. Charles Schwab & Co.*, No. 14-cv-2712.

72.     Settlement administration fees comparable to or higher than that requested in this matter were approved in the cases set forth above. While several of the settlements included more class members than in this Action, the administration costs increase substantially when a settlement calls for payment distributions or payment installments over an extended period. *See Quow v. Accurate Mech. Inc.*, 15-cv-9852, 2018 U.S. Dist. LEXIS (S.D.N.Y. July 10, 2018); *Rodriguez v. Park It Mgmt. Corp.*, 17-cv-4995, Dkt. No. 116 (S.D.N.Y. Feb. 14, 2019). This settlement provides for both two (2) payment distributions and Defendants' payment of the settlement amount via a total of approximately twenty (20) checks, to be deposited on a monthly basis. (Ex. A ¶¶ 3.1(B)-(E)). Therefore, the costs requested by the Settlement Administrator fall within the range of reasonableness and are approved.

**X.      Conclusion and Dismissal**

73.      The Court approves the terms and conditions of the Settlement Agreement.

74.      The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement.

75.      The entire case is dismissed on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final Order and Judgment shall bind, and have res judicata effect with respect to all Rule 23 Class Members.

76.      The Court approves and incorporates herein by reference the releases and waivers set forth in the Settlement Agreement which shall be binding upon the Class Members as set forth in such agreement.

77.      Neither this Order, Settlement Agreement, nor any other documents or information relating to the settlement of this action shall constitute, be construed to be, or be admissible in any proceeding as evidence (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure or comparable state law or rules, (b) that any party has prevailed in this case, or (c) that the Defendants or others have engaged in any wrongdoing.

78.      Given that the parties have consented for the Court to close this case following entry of this Order, the Court shall not retain jurisdiction as set forth in the Settlement Agreement. All parties have agreed to this modification in writing of the Settlement Agreement. (*See* Dkt. No. 134).

79.      This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

It is so ORDERED this ____26th____ day of ____August____, 2022.

/s/ Roanne L. Mann
Honorable Roanne L. Mann
United States Magistrate Judge